## JOSEPH SOMMER v. CONTINENTAL PORTLAND CEMENT COMPANY, Appellant.

In Banc, December 6, 1922.

1. **NEGLIGENCE: Evidence: Marital Status of Plaintiff.** In an action for damages for ·personal injuries alleged to be due to defendant's negligence, the admission of testimony of plaintiff that he was a married man at the time of the accident is technical error, but unless it has a tendency to increase the verdict its admission is not prejudicial.

2. ———: ———: **Interest of Witness in Controversy: Settlement of Like Claim: Compromise.** It was not prejudicial error to permit defendant's witness, who had in his examination in chief for defendant testified he had been injured in the same accident in which plaintiff received his injuries, to answer on cross-examination that he had settled with defendant his claim for damages; and particularly was such answer not prejudicial where the trial court in ,overruling an objection thereto stated it tended to show the attitude and relation of the witness to defendant, and gave the usual instruction concerning the interest of witnesses as affecting their credibility. Such answer was not indicative of a compromise, and both by statute and numerous decisions recognition is given to the right to show the interest of a witness in the controversy as affecting ·his credibility.

3. ———: **Instruction: Misleading: Blasting Rock: Inserting Cartriges in Hole: Reasonably Safe Method.** A number of holes had been drilled in a quarry in which highly explosive compounds were being placed for the purpose of blasting rock, and plaintiff, a common laborer, was engaged in tamping earth and other substances in one of them, which was partly filled with packages of Trojan powder, eight .inches in length, five inches in diameter and weighing eight or nine pounds. The holes were seven inches in diameter and eighty or ninety feet deep, and it was the custom to drop seven or eight of these cartridges into a hole, and then tamp it, and some of them were dropped into the hole at which plaintiff was at work by the defendant's foreman, and following the dropping into it of one by a fellow-workman an explosion followed which caused plaintiff's injuries. In his petition he charged that defendant negligently dropped said cartridges into said deep and rough hole without breaking them up or open, and without providing any

means of letting them down easily and safely. There was testimony that the usual and customary method of loading holes for shots was to lower the cartridges into a hole by means of a string, and there was contrary evidence that it was safe and usual to drop them. The court gave an instruction in which it withdrew from the jury consideration of certain methods of placing cartridges in the hole, among them, "whether defendant was negligent in dropping the cartridges into the holes, instead of lowering them with a cord," and followed this with another instruction in which the jury were told that if they found that defendant's foreman caused one of said cartridges to be dropped down into said hole and that "such method of loading the said hole was not reasonably safe and that an explosion resulted therefrom" and that defendant knew or could have known by the exercise of ordinary care that "such method was not reasonably safe," the verdict would be for plaintiff.

*Held*, by WALKER, J., with whom GRAVES, J., concurs, that the question to be determined by the jury was whether the method of lowering the cartridges into the hole was a reasonably safe method, but that question was not submitted by the first instruction, but that instruction calls for a comparison of the method used and the method of lowering the cartridges by means of a cord, and the conflict between said instruction and the second given was such as to mislead the jury.

*Held*, by JAMES T. BLAIR, J., that the first instruction was peculiarly appropriate, and as it specifically referred the jury to the second, which clearly required the jury to find that the method used was a reasonably safe method, there was no conflict, and no misleading of the jury. A majority of the judges do not agree with either opinion on the point, but do agree in the result reversing the judgment and remanding the cause for further trial.

4. ———: ———: Assurances of Manufacturer. A showing that the manufacturer of explosives to be used in blasting rock in a quarry had complied with his duty and had recommended their use in the manner they were used, will not exonerate the defendant from his duty to exercise ordinary care for the safety of his employees while handling such explosives.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

REVERSED AND REMANDED.

*Kelley & Starke* and *Charles E. Morrow* for appellant.

(1)  Instruction 1, given by the court of its own motion, is erroneous, because it submitted to the jury the question whether the defendant was negligent in dropping the cartridges into the hole instead of lowering them with a cord.  This instruction singles out the method of lowering the cartridges into the hole with a cord, and sanctions the same as being reasonably safe, and makes the defendant liable if the lowering of the cartridges into the hole with a cord was more safe than dropping them into the hole, and makes the method of lowering the cartridges into the hole with a cord the standard of care on the part of the defendant.  Tabler v. Railroad, 93 Mo. 79; Muirhead v. Railroad, 103 Mo. 251; Glover v. Meinrath, 133 Mo. 292; Stone v. U. P. Railroad, 35 Utah, 305.  (2)  The court erred in permitting the plaintiff to show that the defendant had settled with the witness Robinson, who was injured at the same time plaintiff was injured, and also erred in permitting plaintiff's counsel to argue this fact to the jury.  Marshall v. Taylor, 168 Mo. App. 240; Ga. Ry. & Elec. Co. v. Wallace & Co., 122 Ga. 547; Routledge v. Rambler Auto Co., 95 S. W. 749; Vantier v. Refining Co., 231 Pa. 8; Rookard v. Ry. Co., 84 S. C. 190; Creighton v. Ry. Co., 68 Neb. 456; Gault v. Railroad, 63 N. H. 356; Comstock v. Township of Georgetown, 137 Mich. 541.  This evidence being incompetent and absolutely prejudicial, because it was construed by the jury to be an admission of liability on the part of the defendant, the court erred in not discharging the jury at the request of the defendant when the evidence was admitted and when the same was argued by counsel to the jury.  (3)  The court erred in permitting the plaintiff to show that he was married. Mahaney v. Railroad, 108 Mo. 191; Stephens v. Railroad, 96 Mo. 207; Dayharsh v. Railroad, 103 Mo. 570; Williams v. Railroad, 123 Mo. 573; Hecke v. Dunham, 192

S. W. 120.    (4)   The court erred in refusing an instruction asked by defendant which told the jury that if defendant purchased the powder in question from a reputable manufacturer and was instructed by it to drop the powder in the hole, defendant was not liable 'unless before the plaintiff was injured defendant knew, or by the exercise of ordinary care would have known, that such a method was unsafe and dangerous.

*Roy Hamlin, Glen Mohler* and *Leonard, Sibley & McRoberts* for respondent; *Shepard Barclay* of counsel.

(1)   It was not error against defendant for the court to submit to the jury only one charge of negligence. Gannon v. Gas. Co., 145 Mo. 512; Meeker v. Elect. Co., 279 Mo. 602; State v. Ellison, 223 S. W. 671.   (2)   There was no error in permitting defendant's witness, whom defendant had shown was injured in the same explosion as plaintiff, to be asked whether he had "settled" with defendant. Gordon v. Railroad, 222 Mo. 516; Czezewzka v. Railroad, 121 Mo. 213; State v. Harris, 209 Mo. 423; Bradbury v. Smith, 181 S. W. 415; Huss v. Bakery Co., 210 Mo. 44; Koenig v. Union Depot Co., 173 Mo. 698; Campbell v. Railway, 86 Mo. App. 67; Hilburn v. Ins. Co., 140 Mo. App. 355. The point of objection was not properly made. State v. Diemer, 255 Mo. 346; Hafner Co. v. City, 262 Mo. 634.   (3)   There was no error in permitting plaintiff, in the questions introductory to his statement of his case, to testify that he was a married man. Cooper v. State, 63 Ala. 81; Railway v. Ransom, 63 S. E. 525; Tract. Co. v. Rye, 148 Pac. 102; Eoff v. Ry., 126 Pac. 533; Railway v. McClain, 162 Pac. 752; Hewitt v. Railway, 67 Mich. 80; Cochran v. United States, 157 U. S. 291; Carson v. Smith, 133 Mo. 606.   (4)   The refused request of defendant for an instruction, in so far as it had any correct direction, was given in other instructions; and it was otherwise without evidence to support its assumptions of fact.   Defendant had "knowledge or

information concerning the ingredients'' of the cartridges and knew of their dangerous composition sufficiently to be charged with the duty of using care commensurate therewith. So the court properly refused to present to the jury an assumption of facts contrary to the evidence, without which evidence the request was not correct. (5) Upon the facts shown by defendant's own evidence it is liable for plaintiff's injury; hence no error of procedure, if any existed, would be material as the judgment was for the right party, as a matter of law. R. S. 1919, secs. 1276, 1513; King v. King, 155 Mo. 406; Lewis v. Curry, 74 Mo. 49; Deal v. Cooper, 94 Mo. 62; Shinn v. Railroad, 248 Mo. 173; Walsh v. Exposition Co., 101 Mo, 543; Railway v. Moore, 228 U. S. 433. The explosion itself, without any exonerating explanation by defendant, is evidence of a defective method of doing this dangerous work, involving the use of high explosives, and such defective method is evidence of liability, proven by defendant's own testimony. Snyder v. Wagner Co., 223 S. W. 911; Neveu v. Sears, 155 Mass. 303; Ash v. Printing Co., 199 S. W. 994; Judson v. Powder Co., 107 Cal. 549.

WALKER, J.—This is a suit for damages for personal injuries resulting from a premature explosion in the quarry of defendant where the plaintiff was employed. Upon a trial before a jury there was a verdict in plaintiff's favor in the sum of twenty-five thousand dollars, from which the defendant has appealed.

In August, 1916, the plaintiff was employed as a common laborer in defendant's rock quarry in St. Louis County. In the performance of his work, the plaintiff was required to use powder and other explosives. Acting under the direction of the defendant's superintendent, the plaintiff was tamping earth and other substances in one of the holes that had been bored for the purpose of blasting. This was one of a number of holes that had been drilled in a ledge of rock by the defendant; it was about seven inches in diameter and eighty or ninety

feet in depth, and at the time of the explosion it was partly filled with a compound of a highly explosive character. This material was called Trojan powder, and was in packages eight inches in length and five inches in diameter, each weighing eight or nine pounds. It was the custom to drop seven or eight of these cartridges into a hole and to tamp each one, after it had been lowered, with a piece of wood. This procedure was followed until the hole was loaded. In this instance from fifty-four to sixty-five cartridges had been placed in the hole and had been tamped in by the plaintiff as a part of his duties. Some of these cartridges were dropped into the hole by one of the defendant's foreman, and following the dropping of one into the hole by a fellow-workman, named Alongi, the explosion occurred which resulted in plaintiff's injuries. They consisted in the loss of the sight of both eyes, almost the entire hearing of his right ear, with severe burns about the head and face and such a nervous shock as to render him unconscious for about four weeks. Subsequently thereto he has been unable to perform any labor. At the time he was earning $2.20 per day. He testified that he did not know the cause of the explosion and had not been warned of the danger of same. Cross-examined, however, he testified that he knew the material being used in blasting was dangerous and that it would explode.

Witnesses for plaintiff who qualified as experts testified that it was usual and customary in loading holes for shots, to lower the cartridges of powder into same by means of a string, instead of dropping them into the holes or to open the cartridges or packages and pour the contents into the holes.

The defendant's evidence tended to prove that Trojan powder had not been used by the defendant in its business prior to January, 1916; that when this powder was purchased, the manufacturer of same sent to the defendant's plant an expert to instruct the defendant in its use, and this expert advised the defendant that the

way to use this powder was to drop the cartridges down into the hole and that it was perfectly safe to so do, and that he demonstrated this to the defendant and actually dropped many cartridges of the powder into the holes of the same depth of the hole here in question, and that defendant thereafter used this powder in the same way up to the time plaintiff was injured, using the same three times for the purpose of blasting down rock in the months of January, June and August, 1916; that this powder would not be caused to explode by a jar, such as dropping it down into a deep hole, but was only subject to be discharged by particular shock from the explosion of a detonating cap, or by an electric shock, or by an ordinary black powder fuse which communicated fire to it.   The defendant's evidence further showed that it relied upon the representations and followed the instructions of the manufacturer of the powder as to the method and manner of loading the holes in question.   The defendant also offered the testimony of four experts that it was usual and customary all over the country to load the shots of Trojan powder into the holes for the purpose of blasting in the manner in which the hole in question was loaded, that is, to drop the cartridges down into the hole, and that this method had been used with safety.   Plaintiff was permitted to testify that he was married; and a foreman of the defendant who was injured by the explosion was required to state, when on the witness stand, whether he had settled with the company for his injuries.

Error is assigned in the trial court's rulings upon this testimony, in permitting plaintiff's counsel to argue the fact that the foreman had settled with the defendant for his injuries.   The giving and refusing of instructions was also complained of; and that the defendant's negligence was not touched upon in the argument of the case, but the argument of counsel for plaintiff was confined to the severity of the plaintiff's injuries, with a view of inflaming the minds of the jury.   The presence of the plaintiff's wife and small children in the courtroom dur-

ing the trial and the cries of the youngest of the latter for its father are urged as occurrences calculated to improperly influence the minds of the jury.

I. Technically considered the admission of the testimony of the plaintiff that he was a married man was error. The rule of exclusion in all of the cases, however, will be found to have been applied where the nature of the inquiry, usually as to the number and ages **Marital Status.** of children, was held to have had a tendency to increase the verdict, and hence prejudicial. There was no such showing here and the manner in which the question as to the marital status of the plaintiff was propounded, although wholly immaterial, did not constitute prejudice and this assignment is overruled.

II. Prejudicial error is assigned in permitting one of the defendant's foremen, who had been examined in chief by the defendant and who had testified that he had been injured in the same explosion, to answer an inquiry on cross-examination as to whether he had settled with the defendant for the injuries inflicted. **Interest of Witness: Credibility: Compromise.** The trial court overruled the objection to this inquiry on the ground expressly stated that the testimony tended to show the attitude and relation of the witness to the defendant.

Statutory recognition is given to the right to show the interest of a witness in a controversy for the purpose of affecting his credibility. [Sec. 5410, R. S. 1919.] Numerous cases may be cited attesting the application of this rule under different circumstances and conditions.

In Koenig v. Union Depot Co., 173 Mo. l. c. 722, where the action was for damages for killing plaintiff's child, and the attorney for plaintiff was a witness for her, defendant was not allowed to show by cross-examination that the witness had a financial interest in the case. This court held that the exclusion of this testimony was reversible error.

In Czezewzka v. Railway Co., 121 Mo. 213, this court said: "It often becomes necessary, in order that a jury may properly weigh the testimony of a witness, that his temper, feeling and disposition be made manifest by cross-examination. The extent to which this may go must necessarily be left largely to the discretion of the trial judge."

In State v. Harris, 209 Mo. l. c. 443, this court held: "While the authorities cited concur in holding that a liberal cross-examination should be allowed, they also hold that the extent to which it may go is largely in the discretion of the trial court."

In Huss v. Bakery Co., 210 Mo. l. c. 76, this court in banc held that it was proper for defendant on cross-examination of plaintiff's witnesses to show that the witnesses and plaintiff were members of the same labor union: "This evidence was admitted for the purpose of showing the relation that existed between the plaintiff and his witnesses, in order that the jury might take that fact into consideration in determining what weight it should give to their testimony. Such evidence is always admissible."

In the case of Gordon v. Railroad, 222 Mo. l. c. 537, it was held that the action of the trial court in permitting plaintiff's counsel to show in cross-examination of a witness for defendant that the witness had been discharged by defendant for drunkenness and that the witness then had pending with defendant an application for reinstatement, was correct and proper: "it was not improper, for the purpose of affecting his credibility as a witness, to bring out any facts on cross-examination which tended to show any bias in favor of the party whose witness he was or his interest, if any, in the suit."

Under these rulings, in view of the limitation of the trial court as to the scope of this testimony and the request by the defendant and the giving of same by the court of the usual instruction as to the interest and credibility of witnesses, no fault is found with the admission of this testimony.

It may interest the curious to know that in several other jurisdictions such testimony is held not improper as tending to show an admission of liability on the part of the defendant. [Nickles v. Railway, 74 S. C. 102; Weiss v. Kohlhagen, 58 Ore. 144; Railway v. Thomas, 167 S. W. (Tex.) 785; Grimes v. Keene, 52 N. H. 330; Howland v. Bartlett, 86 Ga. 669.]

There was nothing in the testimony objected to indicative of a compromise. The rule, therefore, against the admissibility of testimony of that character was not violated.

III. The legal propriety of instruction numbered 1 given by the court on its own motion is challenged. This instruction, omitting therefrom certain specifications withdrawn from the jury, is as follows:

Conflicting Instructions.

"You are further instructed that the court submits for your consideration the following questions only:

"First. Whether defendant was negligent in dropping the cartridges into the holes instead of lowering them with a cord.

"Second. Whether the explosion resulted from the method used in dropping the cartridges and was caused thereby.

"Third. Whether the explosion was due solely to accident without negligence on the part of the defendant; and upon these questions the court gives you the following instructions."

This is followed by the other instructions which were given.

The charge of negligence as disclosed by plaintiff's petition, upon which it went to the jury, is as follows: That "the defendant negligently dropped the said cartridges into said deep, rough holes without breaking the cartridges up or open, and without providing any means of letting same down easily and safely into the holes; that this method of loading the said holes was negligent and unsafe and dangerous, and likely to cause the said

Sommer v. Cont. Portland Cement Co.

powder to explode, particularly with the jagged, sharp rocks on the sides and bottoms of the holes, as the defendant knew, or would have known by the exercise of reasonable care.''

Instruction No. 1-A, given by the court at the request of the plaintiff, conforms to the above charge. This instruction is as follows:

''The court instructs the jury that the master is required to use ordinary care and to adopt reasonably safe methods in the conduct of its business, and that, in the use of high explosives ordinary care is such care as a reasonably prudent man would use in view of the hazardous nature of the business, and if the jury shall find from the evidence that plaintiff was employed on and about August 26, 1916, by defendant as a laborer in the quarry mentioned in the evidence, and was inexperienced in the handling of high explosives, and if the jury shall find that holes had been drilled to a depth of approximately eighty feet into which a high explosive, to-wit, Trojan powder, was being loaded, and if the jury shall find that plaintiff was instructed by defendant to assist in these operations, and at the time of the explosion mentioned in the evidence was, pursuant to the instructions of defendant's foreman (if in fact he was so instructed), standing at or close to one of said holes while same was being loaded, and if the jury find from the evidence that while so standing there, defendant's foreman caused to be dropped a cartridge of said explosive weighing approximately eight pounds down the said hole and that said hole had in it at the time a considerable amount of said explosive, and if the jury find from the evidence that such method of loading the said hole under said conditions was not reasonably safe and that an explosion resulted therefrom and was caused thereby and that plaintiff was injured by the said explosion, and that, at the time he was in the exercise of reasonable care on his part, and if you further find that defendant knew or by the use of ordinary care as defined

295 Mo.—34

above, could have known, that such method was not reasonably safe, then your verdict should be for plaintiff.''

''The correctness of this instruction,'' as GRAVES, J., said in a tersely phrased dissenting opinion when this case was transferred from Division One to be heard in Court in Banc, ''cannot be questioned. The question in the case was whether or not the method adopted by the defendant for lowering the powder in the hole was a negligent method. Better stated, whether or not the method used and adopted was a reasonably safe method. Upon the ground of negligence, this was the sole question.'' But under none of the questions submitted by the trial court in Instruction 1, as the only ones to be considered, was the jury required to consider, much less find that the method employed in loading the holes was not a reasonably safe method. Instruction 1 calls for a comparison between the method of loading used and that of lowering the explosives by means of a cord for the purpose of determining negligence. That was not the question. Both methods might have been reasonably safe or otherwise. Instruction numbered 1, therefore, is error in that it does not submit the only question that was to be considered, viz: Was the method used a reasonably safe method? The conflict, therefore, between instruction numbered 1 and instruction numbered 1-A is such as to mislead, rather than guide, the jury. [Glover v. Meinrath, 133 Mo. l. c. 304; Muirhead v. Railway, 103 Mo. l. c. 252; Tabler v. Railway Co., 93 Mo. l. c. 84.]

IV. It is contended that the trial court erred in refusing to give the following instruction requested by the defendant:

''7. There is no evidence in this case that the cartridges or powder used by defendant, and mentioned in evidence, was not when procured by defendant properly mixed or manufactured, or was defective or dangerous, or likely to

**Proper Manufacture.**

prematurely explode, and you cannot consider this charge in plaintiff's petition or find in favor of plaintiff thereon.''

There is ample evidence to show that the defendant knew the character of the explosives being used by it when the plaintiff was injured. To authorize the giving of an instruction of the character above indicated would, upon a showing that the manufacturer or his agent had complied with his duty, tend to exonerate the defendant from that degree of care ordinarily required in such cases. Whatever may have been the directions as to the use given by the manufacturer or its agent to the defendant, the duty of the latter to exercise ordinary care for the safety of its employees remained the same. The refusal of the trial court, therefore, to give this instruction was not error.

V.   I concurred in the dissent to the Commissioner's opinion that the verdict should not exceed twenty thousand dollars. This concurrence was based not upon the writer's personal conviction, as I have indicated in other cases, that the amount indicated should constitute a maximum that might be allowed for injuries of the character in question; but that definite information might be afforded as to the amount of damages this court would approve upon a subsequent review of the same facts if such review became necessary. As the case must be reversed and remanded, this will suffice in the disposition of the question of excessive damages.

**Excessive Verdict.**

Other than the foregoing, additional assignments of error are not stressed by the defendant and consequently do not demand our consideration.

For the reasons stated, the judgment of the trial court is reversed and the case remanded for a new trial. *Graves, J.,* concurs; *Higbee* and *David E. Blair, JJ.,* conrur in the result; *James T. Blair, J.,* dissents in separate opinion; *Woodson, C. J.,* and *Elder, J.,* absent.

JAMES T. BLAIR, J. (dissenting).—The opinion reverses the judgment and remands the cause on the sole ground that the trial court erred in giving instruction "1," given on its own motion. This conclusion is reached by holding that "under none of the questions submitted by the trial court in instruction numbered 1, as the only ones to be considered, was the jury required to consider, much less find, that the method employed in loading the holes was not a reasonably safe method. Instruction numbered 1 calls for a comparison between the method of loading and that of lowering the explosives by means of a cord for the purpose of determining negligence. That was not the question. Both methods might have been reasonably safe or otherwise. Instruction numbered 1, therefore, is error in that it does not submit the only question that was to be considered, viz: Was the method used a reasonably safe method? The conflict, therefore, between instructions numbered 1 and 1-A is such as to mislead, rather than guide, the jury." Instruction numbered 1-A was given on respondent's request and is held, in the majority opinion, to have submitted in a correct way the question whether the method used was reasonably safe.

It will not be denied that instructions are to be read together when they are not so drawn as to preclude such a course, under certain other rules held valid by this court. Instruction numbered 1 was given by the trial court to clear away certain grounds of recovery which were abandoned or which were not supported by any evidence. After withdrawing certain issues it states that three questions are submitted, details them and closes with these words: "And upon these questions the court gives you the following instructions:" This is followed by other instructions given by the court, and then by the instructions given on the request of respondent and appellant, in order.

In view of the specific reference in Instruction 1 to the instructions subsequently given as express directions

for the jury to follow on the question of liability it would seem that it is particularly appropriate to read Instruction 1, merely a general statement of issues, in connection with the particular instructions given on these issues and expressly referred to in Instruction 1 as containing the directions to be followed by the jury in determining the question of liability. While it will require some space, it is appropriate to set out instructions numbered 1 and 1-A together, so that the question may be more clearly seen. So set out they read as follows:

"1. The jury is instructed to disregard the following specifications of alleged negligence in plaintiff's petition, and you will not consider same:

"First: The allegation that defendant dropped cartridges into the hole without breaking said cartridges up or open.

"Second: That defendant failed to instruct plaintiff or advise him or warn him to step back out of harm's way when cartridges were being dropped into the holes.

"Third: That defendant permitted the cartridges or powder to become old or damp or to freeze or deteriorate.

"Fourth: That defendant placed in each hole percussion caps with long pieces of fuse filled with high explosives.

"Fifth: That defendant provided and permitted to be used a wire with iron, steel or other weights attached to the end of it for measuring depths in said holes, and that the use of same was likely to generate or cause sparks.

"You are further instructed that the court submits for your consideration the following questions only:

"First: Whether defendant was negligent in dropping the cartridges into the hole instead of lowering them with a cord.

"Second: Whether the explosion resulted from the method used in dropping the cartridges and was caused thereby.

"Third: Whether the explosion was due solely to accident without negligence on the part of defendant; and upon these questions the court gives you the following instructions:

"1-A. The court instructs the jury that the master is required to use ordinary care and to adopt reasonably safe methods in the conduct of its business, and that, in the use of high explosives ordinary care is such care as a reasonably prudent man would use in view of the hazardous nature of the business, and if the jury shall find from the evidence that plaintiff was employed on and about August 26, 1916, by defendant, as a laborer in the quarry mentioned in the evidence, and was inexperienced in the handling of high explosives, and if the jury shall find that holes had been drilled to a depth of approximately eight feet into which a high explosive, to-wit, Trojan powder, was being loaded, and if the jury shall find that plaintiff was instructed by defendant to assist in these operations, and at the time of the explosion mentioned in the evidence was, pursuant to the instructions of defendant's foreman (if in fact he was so instructed), standing at or close to one of the said holes while same was being loaded, and if the jury find from the evidence that while so standing there, defendant's foreman caused to be dropped a cartridge of the said explosive weighing approximately eight pounds down the said hole and that said hole had in it at the time a considerable amount of said explosive, and if the jury find from the evidence that such method of loading the said hole under said conditions was not reasonably safe and that an explosion resulted therefrom and was caused thereby and that plaintiff was injured by the said explosion, and that, at the time he was in the exercise of reasonable care on his part, and if you further find that defendant knew or by the use of ordinary care as defined above, could have known, that such method was not reasonably safe, then your verdict should be for plaintiff."

It is conceded in the opinion that Instruction 1-A is correct and unobjectionable. The part of the opinion already quoted shows that the ruling reversing the judgment and remanding the cause was grounded upon the propositions that Instruction 1, given by the court of its own motion, considered without regard to Instruction 1-A, (1) did not require the jury to find that the method employed in loading the holes was not a reasonably safe method; (2) "calls for a comparison between the method of loading used and that of lowering the explosives by a cord for the purpose of determining the question of negligence;" and (3) did "not submit the only question that was to be considered, viz: Was the method used a reasonably safe method?" The opinion then holds, upon these premises, that "the conflict, therefore, between Instruction numbered 1 and 1-A is such as to mislead . . . the jury."

As to the first of these ("1"), it is to be observed that Instruction No. 1 does not purport to submit anything to the jury. It is frankly and merely a preliminary instruction given to withdraw certain issues and catalogue those which survived. Certainly it cannot be maintained that such an instruction is erroneous simply because it fails to submit a particular issue to the jury when it does not purport to cover the case and authorize a verdict or submit any issue, or direct the jury as to the rules of law upon any issue but is expressly designed merely to enumerate the issues and explicitly refers the jury to the other instructions for the whole of the law of the case. If this sentence "(1)" of the opinion is intended as an essential part of the foundation of the ruling made and is sound, then it must follow that no instruction of any sort can be given in any case which does not submit to the jury the issues on the question of liability. It is confidently asserted that if the premise is correct, this conclusion cannot be escaped. That no such rule exists is too plain to require discussion. The same considerations dispose of the statement quoted un-

der "(3)" next above. Doubtless the real point intended to be made is found under "(2)." Is it true that the recitation under "First" in Instruction 1 calls "for a comparison between the method used and that of lowering the explosive by means of a cord *for the purpose of determining negligence?*" The opinion says it does, holds it thereby is brought into conflict with Instruction 1-A, and reverses the judgment and remands this cause for that reason. On its face the instruction calls for nothing. Under its plain language it submits nothing. In its closing clause, by the clearest and most necessary implication, it denies that it calls for anything or, of itself, submits anything, for "the purpose of determining negligence" or any other purpose. It does recite, merely, that one question is "whether defendant was negligent in dropping the cartridges into the holes instead of lowering them with a cord." Upon this issue, with the rest, Instruction 1 refers the jury to the subsequent matter as the "instructions" to govern them. Among those instructions is No. 1-A which the court holds correctly submits the issue in question, that of negligence. That instruction expressly requires the jury, before finding for respondent, to find that the method used in loading the hole "was not reasonably safe and that an explosion resulted therefrom and was caused thereby and that plaintiff was injured by the said explosion . . . ."

It is obvious that these instructions in no sense authorized the jury to find for respondent on a simple comparison of the relative safety of the method of dropping the explosive into the hole and that of lowering it with a cord and a finding that the former was less safe than the latter without regard to whether the former was a reasonably safe method. This is apparent from the fact that Instruction 1 authorizes no finding at all and Instruction 1-A authorizes no finding for respondent unless the jury find the method used was not reasonably safe in the circumstances. It is manifest that the method

of lowering the explosives by a cord would have been safer than that which was employed. This was one of the methods of the general use of which there was evidence. There was also evidence tending to show that certain kinds of explosives of a granular nature were customarily poured from the cartridge into the holes where they were to be used. It was competent to show the practice in like circumstances. The court in settling the instructions had before it numerous requests of appellant. One of these was that the court should instruct the jury that "there is no evidence in this case that defendant was guilty of negligence in dropping cartridges into the holes, mentioned in evidence, without breaking said cartridges up or open, and you cannot consider this charge in plaintiff's petition or find in favor of plaintiff thereon." This was refused, but the court gave it in principle and, in part, in identical words under "First" in Insrtuction 1. Appellant also requested the court to instruct the jury that "there is no evidence in this case that defendant negligently dropped cartridges into the holes, *without providing any means of letting said cartridges down easily and safely into said holes,* and you cannot consider this charge in plaintiff's petition or find in favor of plaintiff thereon." This was refused, but it constituted the first appearance in the instructions asked of the mention, in conjunction, of the two methods. It was from this request that the court formulated the sentence now held fatal to the judgment.

It seems reasonably clear that (1) there was no error in the instruction in the respect in which it is criticized in the majority opinion; and (2) even were the majority opinion sound on that feature, yet it would be necessary to hold such error to have been invited and, therefore, no proper basis for the judgment ordered in this case. This covers the only ground upon which the conclusion of the majority is founded. The motion for rehearing should be sustained. Very respectfully I dissent.