BENJAMIN B. JOICE v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—No. 39366.—189 S. W. (2d) 568.

Division Two, September 4, 1945.

Motion for Rehearing or to Transfer to Banc Overruled, October 1, 1945.

440

*Everett Paul Griffin* and *Carl S. Hoffman* for appellant.

*Mark D. Eagleton* and *Wm. H. Allen* for respondent.

442

444

BARRETT, C.—The Missouri-Kansas-Texas Railroad Company appeals from a verdict and judgment finding that Benjamin B. Joice's injuries were caused by its negligence within the meaning of the Federal Employers' Liability Act. 45 U. S. C. A., Secs. 51-60.

Joice was the appellant's section foreman between Porter and Wybark in Oklahoma. J. A. Wilson was the foreman of the Coweta section, immediately to the north. Under the direction of the roadmaster the two crews had been engaged in cleaning up oil that had escaped from storage tanks in the Muskogee yards on to private property. On April 27, 1943 the two crews were returning from the Muskogee yards to their respective sections on motorcars. Wilson's motorcar was towing Joice's motorcar with a rope. About a mile south of Porter as the motorcars were going around a curve, through a cut, they were struck by an extra train traveling in the opposite direction.

The acts pleaded and hypothesized as constituting negligence were (1) that Joice "was required to have his said motorcar towed by the said motorcar ahead by reason and on account of the fact, . . . that the defendant provided the plaintiff with a motorcar that was inadequate and insufficient to do the job intended of it . . . that said motorcar did not have adequate or sufficient power to climb the hills and inclines upon the aforesaid trip, and that by reason thereof, . . . the said motorcar thus furnished to the plaintiff, . . . was not a reasonably safe appliance with which to do said work; and . . . that plaintiff and his said motorcar were required to be towed by the motorcar ahead and were thus and thereby placed in close and dangerous proximity to said motorcar ahead . . . and in such close and dangerous proximity to the aforesaid southbound train, . . . that plaintiff's place of work was thus and thereby made unsafe and dangerous and not reasonably safe, . . . and . . . defendant did fail to exercise ordinary care to furnish plaintiff with a reasonably safe motorcar, . . . and . . . a reasonably safe place of work . . . and (2) defendant through its officers, agents, and employees did fail to give proper instructions and advices to the plaintiff so as to make him aware of the location of said train, . . . and did give the plaintiff improper and erroneous advice as to the location and whereabouts of said train, . . . ."

The railroad contends that there was no evidence of any negligence on its part which was a proximate cause of the collision and, therefore,

446

its demurrers to the evidence should have been sustained. In this connection it is argued that as to a section foreman, whose duties required his presence on the track on a motorcar, there was no duty on those in charge of the train to take any action until the presence of the employee on the track in a place of peril was actually discovered. It is said that a section foreman on the tracks on a motorcar must rely on his own watchfulness and keep out of the way of trains. It is contended that there was no evidence of any ▇▇▇ negligence in the giving of the "sight" (information, instructions and proper advice as to the location and movements of the extra train) by the towerman at Muskogee. It is urged that the sole proximate cause of the collision was Joice's violation of the printed rules which required him to call a dispatcher at every opportunity, to flag cuts and curves and to keep in the clear of trains. It is urged that if there was a defect in the motorcar such defect was not the proximate cause of the accident and injuries. It is contended that the court erred in submitting, in Joice's main instruction, the condition of the motorcar as a proximate cause of the accident, or as an unsafe place to work, and failure to give proper advice as to the location of the train as negligence. It is argued that the court erred in refusing its instructions hypothesizing Joice's failure to remove the motorcar from the tracks and his operating it within six hundred feet of another motorcar, in violation of company rules, as contributory negligence. It is argued that the court erred in refusing its instruction hypothesizing failure to call a dispatcher at Tullahassee for further advice as to the location of the train and failure to flag the cut, in violation of the rules, as the sole proximate cause of the collision. These objections by the appellant and the questions they pose are interrelated and for that reason are grouped together.

▇▇▇ It may be that in some circumstances there is an obligation upon a section foreman, whose duties require his presence upon the tracks on a motorcar, to look out for his own safety, particularly so when the risk or hazard complained of is one that is ordinarily incident to his employment. Thomson v. Downey, 78 Fed. (2d) 487, 489. Here, however, Joice did not rely upon the railroad's breach of its duty to maintain a lookout as negligence and neither was his view of the track through the cut and curve unobscured. Compare in these respects Chesapeake & Ohio Ry. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914; Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758 and Rocco v. Lehigh Valley R. Co., 288 U. S. 275, 278, 53 S. Ct. 343, 344, 77 L. Ed. 743, 745. He did not rely upon being in oblivious and inescapable peril and the railroad's having the last clear chance to avoid hitting him. Compare Deere v. Southern Pac. R. Co., 123 Fed. (2d) 438 and Dodd v. M.-K.-T. Railroad Co., 353 Mo. 799, 184 S. W. (2d) 454. It may be assumed that these contrasting obligations and lack of obligations existed and yet it does

not follow that Joice may not recover in this action if certain other factors and circumstances are made to appear.

He did not rely upon and submit as negligence any of these duties or obligations and they are involved in this action but incidentally. As indicated, he relied upon and submitted as negligence the failure of the railroad's employees to give him correct and proper information as to the location of the extra train and furnishing him an unsafe place to work, consisting of a defective motorcar. And, if the railroad was negligent in either of these respects, within the meaning of the act, it is possible for him to recover irrespective of his or the railroad's duties or obligations in other respects. Under the act, the railroad is liable to its employee "for such injury or death *resulting in whole or in part from the negligence* of any of the officers, agents, or employees of such carrier, *or by reason of any defect or insufficiency*, due to its negligence, in its cars, engines, appliances, machinery, . . . or other equipment," (45 U. S. C. A., Sec. 51) which is a substantial right under the act, protected and governed by the federal rather than local rules of law. Bailey v. Central Vermont Ry., 319 U. S. 350, 352, 63 S. Ct. 1062, 1063, 87 L. Ed. 1444, 1447. The act and its amendments "leave for practical purposes only the question of whether the carrier was negligent and whether that negligence was the proximate cause of the injury. In this situation the employer's liability is to be determined under the *general rule which defines negligence* as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 67, 63 S. Ct. 444, 451, 87 L. Ed. 610, 617. In this connection it should be noted that the act now releases "the employee from the burden of assumption of risk by whatever name it was called." Tiller v. Atlantic Coast Line R. Co., 318 U. S., l. c. 64, 63 S. Ct., l. c. 449, 87 L. Ed., l. c. 616; Blair v. Baltimore & O. R. Co., 323 U. S. 600, 65 S. Ct. 545, 89 L. Ed. 446. The employee was always relieved of this burden as to negligence on the part of other employees. Boldt v. Pennsylvania R. R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385. Furthermore, as is well known, under the act contributory negligence is not a complete defense and does not bar recovery by an employee who has been negligent,—his negligence merely diminishes the recoverable damages in proportion as the jury finds the negligence attributable to the employee. Godsy v. Thompson, 352 Mo. 681, 689, 179 S. W. (2d) 44, 48.

In view of these principles the decisive question is whether there was evidence that the railroad was negligent in either of the particulars submitted and whether that negligence proximately caused the injuries complained of. If there was proof from which the jury

could find either one of the acts of negligence complained of and submitted, conjunctively, it is not necessary to determine whether there was also proof of the other submitted act. Wilday v. M.-K.-T. R. Co., 347 Mo. 275, 280, 147 S. W. (2d) 431, 434; Tash v. St. Louis-San Francisco Ry. Co., 335 Mo. 1148, 76 S. W. (2d) 690. And whether the railroad was negligent in either of these particulars "may be determined by viewing its conduct as a whole." Blair v. Baltimore & O. R. Co., supra.

As we have pointed out in the beginning, Joice had been assisting in cleaning up oil in the Muskogee yards and had returned to within a short distance of Porter when the motorcars were struck, in a curve and cut, by an extra train traveling in the opposite direction. As the motorcars traveled along he was patrolling his section of the track, watching for defects in the roadbed, ties and tracks. He had been in the employ of the railroad for nineteen years. He testified that the motorcar, he was furnished "had no power, it wouldn't pull much and it was defective in insulation." He said that it was so lacking in power that it would not pull the men and tools uphill from Wybark to Porter. When he worked alone it was necessary to push the motorcar uphill or "double up." During the days he worked with the Coweta gang Wilson used his motorcar to tow Joice's motorcar up the hills as his motorcar could not have gotten up the hill under its own power. In connection with working in the Muskogee yards Joice says that the roadmaster told him that he was to assist Wilson in cleaning up the oil and that Wilson, with his seniority, was to be in charge of Joice. Joice testified that on that occasion he told the roadmaster that the motorcar was defective, that it would not pull the hills or inclines to Porter and that it was dangerous to "double up" or push the motorcar. He says the roadmaster told him that Wilson would tow him in.

On the other hand, the roadmaster, testifying for the railroad said that the only order he gave Joice was that he should go to Muskogee and assist the yard gang in cleaning up the oil. He says he gave no orders as to Wilson's being in control or for Wilson to tow him in. As to Joice's motorcar the roadmaster said: "I never knew it was completely out of condition. I knew that Mr. Joice said something about it, that it wouldn't work good, didn't run good." As best he could recall Joice had complained of the motorcar "about a month" before the collision. Although the roadmaster thought the trouble may have been the gas mixture he said Joice did not seem to know exactly what was wrong with the motorcar but "it seemed like the plugs didn't work good." He said: "We frequently have had that trouble with '32 motors, more than any other kind of motorcar."

Under the act it is plain that there is a continuing duty on the carrier to use reasonable care in furnishing its employee with a safe place in which to work. Bailey v. Central Vermont Ry., supra. Ad-

mittedly, at the time of the collision, Wilson's motorcar was towing Joice's motorcar and it had been so towed every day they had worked at cleaning up the oil, which had been about every other day over a period of two weeks. The motorcar did not operate properly and the roadmaster was aware of the fact that it was defective. The jury could find, from Joice's evidence, that he had been commanded by his superior, after complaining, to go ahead and use the motorcar. Blair v. Baltimore & O. R. Co., supra. But in any event, considering all the circumstances (Bailey v. Central Vermont Ry., supra) it was for the jury to say whether the railroad negligently furnished Joice an unsafe place in which to work, consisting of a defective motorcar to be used on an uphill, obscured cut and curve. Tiller v. Atlantic Coast Line R. R., supra; Rocco v. Lehigh Valley R. Co., supra; Brock v. M. & O. R. Co., 330 Mo. 918, 51 S. W. (2d) 100.

So it is with whether the defective motorcar as an unsafe place to work was the proximate cause of the collision and injuries. The jury could have found for the railroad but it did not and we must accept the facts as they have been found and it may not be said as a matter of law that the defective motorcar was not the proximate cause, of the collision. Tennant v. Peoria & P. U. Ry. Co., 321 U. S., l. c. 35, 64 S. Ct., l. c. 412, 88 L. Ed., l. c. 525. With respect to proximate cause the case is not comparable to a conductor's proceeding ahead with his train contrary to positive written orders to wait on a side track as was the fact in Unadilla Valley Ry. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. Ed. 224 and Southern Ry. Co. v. Young-blood, 286 U. S. 313, 52 S. Ct. 518, 76 L. Ed. 1124. Neither is it comparable to the cases in which an employee relies upon the violation of a rule as establishing liability when he has himself violated the rule, nor of his reliance upon some provision of the act which was not designed for his protection in the particular complained of as was true in Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732; St. Louis-San Francisco Ry. Co. v. Conarty, 238 U. S. 243, 35 S. Ct. 785, 59 L. Ed. 1290 and apparently Yoakum v. Lusk (Mo.), 223 S. W. 53.

The burden was upon Joice to prove that the railroad was negligent and that such negligence was the proximate cause "in whole or in part" of the collision but in doing so he was only "required to present probative facts from which the negligence and the causal relation could reasonably be inferred. 'The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.'" Tennant v. Peoria & P. U. Ry. Co., 321 U. S. 29, 32-33, 64 S. Ct. 409, 411, 88 L. Ed. 520, 524. In this case, in addition to the circumstances mentioned, on cross-examination counsel for the railroad called Joice's attention to a rule, with which he was familiar, which required motorcars running on the tracks to

maintain a space of not less than six hundred feet between one another. Then the following appears:

"Q. And there was no 600 feet between your car in the rear and Mr. Wilson's car in front, was there? A. No, sir.

"Q. And if there had been you wouldn't have been injured, would you? A. No, sir."

And, under all the circumstances, proximate cause like negligence was for the jury to find as it believed and was persuaded by the evidence. Godsy v. Thompson, 352 Mo. 681, 689, 179 S. W. (2d) 44, 48.

It follows that the evidence supports one of the submitted and found grounds of negligence and the demurrers were properly overruled. It also follows that it was not error to submit the same subject in the main instruction hypothesizing liability.

As indicated in the beginning, if Joice was in fact negligent in violating the rules with reference to flagging the curve, or in operating his motorcar within six hundred feet of Wilson's motorcar, or in not getting off the motorcar, or in any other particular, such fact is not a defense to this action. His "infraction of the rule was a concurrent cause, but may not in any proper sense be held the primary cause of the accident. His negligence did not preclude a finding by the jury that his death was in part due to the negligence of the respondent's servants." Rocco v. Lehigh Valley R. Co., supra. It is for this reason that the court did not err in refusing the railroad's instructions hypothesizing contributory negligence upon Joice's failure to remove himself and the motorcar from the tracks and in violating the rules in operating the motorcar within six hundred feet of Wilson's motorcar. Copeland v. Terminal R. Ass'n of St. Louis, 353 Mo. 433, 182 S. W. (2d) 600, 606. The railroad offered and the court gave a correct general instruction on the effect of Joice's contributory negligence. The court also instructed the jury on Joice's violation of the rules and his failure to obtain a further "sight" at Tullahassee as constituting and being the sole proximate cause of the accident and so it was not error to refuse another instruction in somewhat different language on the same subject. Vrooman v. Hill, 347 Mo. 341, 348, 147 S. W. (2d) 602, 605.

Wilson, the Coweta section foreman, was a witness and testified for the railroad. In some matters his evidence was corroborative of Joice's claims but in many important particulars his evidence was contrary to that of Joice and in denial of his claims. On cross-examination it was first developed that he had been injured in the collision. He was then asked if he had not made a claim against the railroad and whether the railroad had settled with him. The court permitted the question and admitted the answer that the railroad had settled with him though the amount of the settlement was not disclosed. It was objected then, as it is now, that it was error to permit

Wilson to say, on cross-examination, that he had been injured in the same accident and that the railroad had settled with him. It is urged that the evidence was prejudicial in that it could only be considered by the jury as an admission of liability, especially so because it was admitted without limitation or restriction by the court.

It is true that proof of a compromise or settlement with a third person is not admissible for the purpose of establishing either the validity or the invalidity of a claim. Sec. 309 American Law Institute's model Code of Evidence; 31 C. J. S., Sec. 292, pp. 1055-1056; Hawthorne v. Eckerson Co., 77 Fed. (2d) 844. It may not be used as an admission against interest or as probative of whether an agent was acting within the scope of his employment. National Battery Co. v. Levy, 126 Fed. (2d) 33; Domarek v. Bates Motor Transport Lines, 93 Fed. (2d) 522. And certainly a plaintiff may not prove by his own favorable witness that the witness was injured in the same accident and that the defendant had settled with the witness. Pfiffner v. Kroger Grocer & Baking Co. (Mo. App.), 140 S. W. (2d) 79. In Paster v. Pennsylvania R. R., 43 Fed. (2d) 908, it does not clearly appear who the witness testified for nor whether the evidence was used as an admission of liability and it may be in the Second Circuit that proof of a compromise is inadmissible in any event unless it can also be shown that the compromise was not in honest settlement of the claim but "a cover for something more than a settlement." But the admissibility of evidence, in a suit under the federal act, is a procedural matter and is governed by the local law of the forum. Central Vermont Ry. v. White, 238 U. S. 507, 511, 35 S. Ct. 865, 867, 59 L. Ed. 1433, 1436; Williams v. St. Louis-San Francisco Ry. Co., 337 Mo. 667, 675, 85 S. W. (2d) 624, 628; Sec. 597 Restatement, Conflict of Laws.

Here Joice's counsel, in the presence of the jury, disavowed any intention of asking the question for the mere purpose of prejudicing the jury and argued that he had a right to show the compromise as affecting Wilson's credibility as a witness for the railroad. The court explained that it thought the evidence admissible to show interest and bias on the part of the witness. Mo. R. S. A., Sec. 1887. Under the circumstances and so limited, in this jurisdiction, it is permissible to show by cross-examination that an adversary witness, injured in the same accident, has compromised and settled his claim with the defendant for the purpose of reflecting his credibility and the weight to be given his evidence, as an inference of interest or bias may be drawn from such fact. Sommer v. Continental Portland Cement Co., 295 Mo. 519, 527, 246 S. W. 212, 214; Breitschaft v. Wyatt (Mo. App.), 167 S. W. (2d) 931, 934; Gurley v. St. Louis Transit Co. (Mo. App.), 259 S. W. 895. Conversely, defendants may show interest and bias on the part of plaintiffs' witness by developing the fact that the witness was injured in the same accident and had filed a suit or made claim

against the defendant. Riner v. Riek (Mo. App.), 57 S. W. (2d) 724; Golden v. Onerem (Mo. App.), 123 S. W. (2d) 617.

 It is also urged that the railroad is entitled to a new trial because of the prejudicial argument of Joice's counsel. It is contended that counsel was permitted to argue matters not in evidence and to make improper inflammatory remarks concerning Joice's conduct, the conduct of other employees, appellant's counsel and one of appellant's witnesses, Dr. Joblin. During Joice's cross-examination counsel for the railroad said: "Now, in the accident there were no men killed, were there?" In his argument Mr. Eagleton said: "Mr. Griffin says nobody got killed. Well, a lot of people are being killed right this minute (June 7, 1944)—a lot of good people are being killed. . . . Sometimes it is better, I suppose, to be killed than to be crippled like that poor devil is." When the court became aware of the fact that Mr. Eagleton was referring to soldiers being killed in the war, the court sustained counsel's objection to that line of argument. There was no request for other or further action by the court (Copeland v. Terminal R. Ass'n of St. Louis, 353 Mo. 433, 182 S. W. (2d) l. c. 606) and, standing alone, it cannot be said that the statement was so prejudicial as to require the granting of a new trial. Rouchene v. Gamble Const. Co., 338 Mo. 123, 135-138, 89 S. W. (2d) 58, 64-65. There was no objection whatever to the argument with reference to the railroad's witness, Dr. Joblin, or to the statement that Joice was entitled to "some sort of a medal" for his conduct in remaining on the motorcar while other members of the crew got off and, consequently, that portion of the argument is not subject to review. Busch v. L. & N. R. Co., 322 Mo. 469, 482, 17 S. W. (2d) 337, 341. One of the most controversial issues in the trial was the location and status of the extra train, whether a proper "sight" had been given, whether Joice had violated the rules with reference to it and whether he could and should have been aware of the train after it left Broken Arrow. The towerman at Muskogee in detailing a telephone conversation, apparently with Joice, said: "the coal run is at Broken Arrow, and nobody knows when it will *break loose*." Another witness, the dispatcher at Muskogee said he told the towerman that the extra train was at Broken Arrow and "*will break loose at any time*." He defined "break loose" as "meaning that he will leave at any time." Several times, in his examination of witnesses and in his argument, counsel for the railroad used the term "break loose." During his argument Mr. Eagleton said: "I asked Mr. Trainmaster could he find out where the train was, and he said, 'We had a train on the loose.' Imagine on the railroad a train on the loose. I have heard of people going on the loose and getting on a binge or a bender or something of that kind and they can't find them for three or four days. I may have done it myself. But I didn't know they ran railroads that way. On the loose!"

Considering this and the argument complained of as a whole (Hancock v. K. C. Terminal Ry. Co., 339 Mo. 1237, 1249-1257, 100 S. W. (2d) 570, 576-580) we cannot say that it was so prejudicial that the trial court abused its discretion in not granting a new trial. Compare Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S. W. (2d) 454, 457-458. The argument that people were being killed in the war had no place in the case. It may be that some advantage was taken of the railroad's unfortunate lingo, a train on "the loose." But none of the argument is comparable to that extravagant, reckless language; so calculated to arouse hostility, resentment and prejudice, used in Monroe v. Chicago & A. R. Co., 297 Mo. 633, 249 S. W. 644 and Harper v. Western Union, 92 Mo. App. 304. Assuming that a portion of the statements present a "borderline case" of prejudicial argument, yet we cannot say that they are so prejudicial as to require the granting of a new trial. Crews v. Kansas City Pub. Serv. Co., 341 Mo. 1090, 1105, 111 S. W. (2d) 54, 62. The prejudicial effect of the argument was before the trial judge who considered it and determined, on motion for a new trial, that it did not improperly influence the jury's verdict and we cannot say that the court abused its discretion in so ruling in this instance. Burow v. Red Line Service, Inc., 343 Mo. 605, 610, 122 S. W. (2d) 919, 921; Cordray v. City of Brookfield (Mo.), 88 S. W. (2d) 161, 165.

The jury assessed Joice's damages at $80,000.00. The trial court required a remittitur of $15,000.00 and judgment was entered for $65,000.00. It is argued that the verdict is yet so excessive that it could have resulted only from passion and prejudice on the part of the jury. But the mere fact that the award of damages is excessive does not of itself indicate passion and prejudice (Schaefer v. Transamerican Freight Lines (Mo.), 173 S. W. (2d) 20, 23) and it is the established practice in this jurisdiction to cure the error of excessive verdicts by enforced remittiturs (Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S. W. (2d) 157; Sofian v. Douglas, 324 Mo. 258, 23 S. W. (2d) 126) and the problem, again, is a procedural one governed by the law of the forum. Avance v. Thompson, 320 Ill. App. 406, 418-419.

Joice was forty-seven when the case was tried. He had a large family and earned about $2,000.00 a year. His injuries are permanent, painful and disabling. His right leg was amputated, leaving a stump of about six and one-half inches. The bone of the stump is about an inch and one-half shorter than the flesh. There was some infection in the stump even at the trial and additional pieces of bone had been removed. It is doubtful that he will be able to use the usual artificial leg. His right arm was broken at the elbow,—there was "a fracture of the ulna, that is the olecranon process of the ulna with separation and a wire has been placed around it to hold it together." The third, fourth and fifth ribs were cracked while there were fractures of the sixth and seventh ribs with some displacement.

There were traumatic-arthritic changes in the spine,—"some changes along the intervertebral discs of the fourth and third articulation." One of Joice's doctors said that he was "totally disabled" for life so far as performing manual labor was concerned.

There is no mathematical formula by which it may be determined whether and how much a verdict is excessive. Each case depends on its own facts, giving some consideration to economic conditions and the compensation awarded and permitted in cases of similar injuries. Jones v. Pennsylvania R. Co., supra. In Aly v. Terminal R. Ass'n of St. Louis, 342 Mo. 1116, 119 S. W. (2d) 363, a verdict of $85,000.00 was reduced to $40,000.00. Aly was forty-two, earned $214.00 a month and both his legs had been amputated in such a manner that he could not use artificial legs. He needed an attendant constantly and was "a physical wreck." In Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, 288 S. W. 777, a railway mail clerk earning $2300.00 a year was totally disabled from performing manual labor and yet a verdict of $85,000.00 was reduced by $50,000.00. In Span v. Jackson-Walker Coal & Mining Co., 322 Mo. 158, 16 S. W. (2d) 190, a man thirty-six was completely paralyzed below the third or fourth lumbar vertebrae and a verdict of $50,000.00 was approved as not excessive. There can be no doubt but that Joice is totally disabled so far as manual labor is concerned and yet he is not so totally and wholly handicapped and his injuries are not so severe as Span's, Aly's or Bond's. Aware as we are of the difficulties inherent in an appellate court's passing on the excessiveness of verdicts (Span v. Jackson-Walker Coal & Mining Co., supra) but viewing the case most favorably to Joice, conceding that the amount of damages is primarily the jury's prerogative and weighing the fact that the trial court considered the excessiveness of the verdict (Mooney v. Terminal R. Ass'n of St. Louis, 353 Mo. 1080, 186 S. W. (2d) 450) we are of the view that the verdict is yet excessive in the sum of $15,000.00 in the light of the above cases.

Therefore, if the respondent enter a remittitur in the sum of $15,000.00, within ten days, the judgment is affirmed in the sum of $50,000.00 as of the date of the original verdict, otherwise the judgment will be reversed and the cause remanded for a new trial. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.