.71 So.2d 27

### ATLANTIC COAST LINE R. CO.

v.

### TAYLOR.

6 Div. 631.

Supreme Court of Alabama.

March 4, 1954.

Graham, Bibb, Wingo & Foster, Birmingham, for appellant.

Harold M. Cook, Jackson, Rives, Pettus & Peterson, Birmingham, for appellee.

MERRILL, Justice.

This is an appeal from a judgment of the Circuit Court of the Tenth Judicial Circuit against the appellant and in favor of the appellee in the amount of $25,000, rendered in a suit by the appellee on behalf of herself as widow and the two minor children, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for damages for the death of her intestate, E. H. Taylor, employed by the appellant as a section laborer in the maintenance of its tracks.

The case was submitted to the jury on three counts of the complaint as amended, being counts designated as "C", "D" and "E". Each of the counts contained the usual averments of the employee relation, engagement in interstate commerce, the averment that the deceased was killed by being run over by a trailer car carrying materials and which became uncoupled from the motor car upon which the deceased had been riding in connection with his maintenance work. Count "C" charged liability as for a negligent defect in the railroad trailer car as follows:

"Plaintiff avers that the said injuries and death of her said husband and intestate and the injuries · and damages herein claimed of the defendant proximately resulted, in whole or in part, by reason of a defect or insufficiency, due to the negligence of the defendant, in its said railroad trailer car or in the appliance or equipment of said railroad trailer car."

Count "D" charged liability upon allegations of a negligent defect in the railroad motor car and was identical with Count "C" except the word "motor" replaced the word "trailer."

Count "E" charged liability upon allegations of negligent failure to furnish a reasonably safe place to work, as follows:

"Plaintiff avers that the said injuries and death of her said husband and intestate and the injuries and damages herein claimed of the defendant proximately resulted, in whole or in part, from the negligence of the defendant, in negligently failing to exercise reasonable care in furnishing and maintaining for plaintiff's said husband and intestate a reasonably safe place to work."

Demurrers being overruled, there was plea of general issue and contributory negligence in short by consent. After verdict and judgment, appellant's motion for new trial was overruled and appellant duly appealed.

The deceased Taylor had been employed as a member of appellant's section crew at Pelham, Shelby County, Alabama, continuously from January 23, 1952, until the fatal accident April 29, 1952, although he had had longer experience in that kind of work previously in working as a section hand for two other railroads.

The accident occurred shortly after the crew resumed work after lunch. The immediate operation was to distribute cross ties for use on the main line not far from

where the crew stopped for lunch. The ties, about 30, and various tools, were loaded on a four-wheeled flat trailer car, with a water keg on top of them near the front; the trailer car was coupled to a regular motor car operated by the Section Foreman with the various members of the crew who were not otherwise engaged, seated on seat boards around the front and sides of the motor car.

After the ties and tools were loaded on the trailer car after lunch time and the movement ready to begin, the deceased Taylor, himself, securely and properly coupled the trailer car to the motor car while both were on the pass track. Thus coupled the cars moved slowly out of the switch onto the main line with Taylor riding on the left front corner of the motor car, the Section Foreman on about the right front corner operating it, the witness Arthur Hudson to the right rear, the witness James Marcus on the right front to the right of the Section Foreman and the other employees seated on the seat boards. The cars had gone only a few hundred feet, proceeding smoothly and slowly, about 6 to 8 miles per hour or a "good trot", when the motor car "jerked like it was loose". The Section Foreman immediately applied the brakes and looked to the rear, as did the other employees. It was then seen that the trailer car was uncoupled from the motor car and a few feet behind it, and Taylor was down on the tracks between the rails being "doubled up" under the front of the trailer car. The motor car was stopped quickly and the detached trailer derailed its front wheels in running over Taylor and stopped with Taylor's body lying between the rails beneath it. Taylor was severely injured but not unconscious, was carried from the scene by the same push car a few miles to a crossing, transferred to an automobile and taken on to a doctor who pronounced him dead on arrival at his office about one hour after the accident.

No one saw how Taylor fell from the motor car or how he got between the cars nor did anyone see the cars become uncoupled or know how they became uncoupled.

Shortly before the accident Taylor, who had been seated safely on the left front corner of the motor car, got up and walked toward the rear past Arthur Hudson stating that he was going to get a drink of water. The Section Foreman was looking ahead, operating the motor car and was not aware of Taylor's action. Neither Hudson nor anyone else saw Taylor as he continued to the rear of the motor car and to the coupling between the motor car and the trailer car.

The type of coupling device then and theretofore used was a "homemade" steel rod about twenty inches in length attached to the rear sill of the motor car by a wye bracket and coupling pin with a hook at the other end to engage in the eye on the end of the coupling bar of the trailer. This coupling rod, made by the crew of which Taylor was a member, had been in similar use for several months, replacing a similar one which was worn, and had never become disengaged while in use on any occasion. According to plaintiff's witness Marcus, after properly being coupled and engaged as Taylor had done on this occasion, the coupling rod could be disengaged and uncoupled only by pulling the rod up by hand and so disengaging the hook.

The coupling rod in question was in sound and efficient condition both before and after the accident and was not broken or affected by it and there was no claim that it was broken in the accident.

The witnesses agreed that the coupling rod was attached to the rear sill of the motor car at a point higher than the place of engaging the hook in the eye of the draw bar of the trailer. Plaintiff's testimony placed this difference at from six to twelve inches. Later in the trial defendant showed that the coupling rod was $7/8$ inches thick, 20 inches long, with a 7 inch hook on the end for engaging in the eye on the trailer and that the eye on the trailer was $7\frac{3}{8}$ inches lower than the point where the rod was attached to the motor car.

Appellant's assignments of error 3, 4, 5 and 6 contend that the court erred in refusing to give peremptory charges as to

the whole case and as to each of the three counts. The requested charge under assignment No. 3 was: "1. The court charges the jury that under the evidence in this case your verdict must be for the defendant."

The requested charge under assignment of error 4 was: "5. The court charges the jury that under the evidence in this case you cannot return a verdict for the plaintiff under Count 'C' of the complaint." The charges under assignments 5 and 6 were identical with charge No. 5 except the letters "D" and "B" were respectively substituted for the letter "C".

In our recent case of Atlanta & St. Andrews Bay Ry. Co. v. Burnett, 259 Ala. 688, 68 So.2d 726, 731, we said:

"* * * Without doubt, however, actionable negligence may be established by circumstantial evidence. Lavender v. Kurn, 327 U.S. 645, 66 S. Ct. 740, 90 L.Ed. 916; Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520. Furthermore, as in this case, where the affirmative charge was refused the defendant, the entire evidence must be viewed in its most favorable aspect to the plaintiff and where this is done and a reasonable inference may be drawn adverse to the party requesting the affirmative charge, such charge is properly refused. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224; Alabama Power Co. v. Buck, 250 Ala. 618, 35 So.2d 355."

The tendencies of the evidence showed that the witness Marcus saw Taylor standing on the ground facing the trailer car after the motor and trailer car had become disengaged just before he was run over by the trailer car; also that one of the braces under the push car was broken, that there were screws loose in the piece axle, that the housing was "swagging" down when they ate dinner that day and that he had noticed the trailer car "shimmy" prior to the time that Taylor was killed.

Furthermore, Mr. J. W. Littleton, one of plaintiff's witnesses, testified that he had been employed by the L. & N. R. R. Co. in the Birmingham District as a track or section foreman for 40 years, and was presently in charge of a crew of 13 men maintaining and building track, using a motor car and trailer car in the performance of his duties; that he had observed the track maintenance and repair of all the other railroads in the district and the methods were similar and the trailer cars were similar and that he was familiar with the customary method by which the motor and trailer cars were coupled. Then, having qualified him as an expert, a hypothetical question was asked, which described the coupling in the instant case and ended as follows: "I will ask you to state to the Court and jury based upon your 40 years of experience as a section foreman for the L. & N. Railroad Company and based upon your observations pertaining to this type of equipment and the operation of this type of equipment, as to whether or not such a coupling would be a reasonably safe and secure coupling under those conditions?" Over defendant's objection, the witness replied, "No, it would not be." He gave as the reason for his answer that it was unsafe that the bar was not horizontal and there would be a tendency for the bar to rise or slip out, or to raise the front wheels of the trailer. Defendant made no attempt to refute or rebut this evidence by other expert testimony.

Plaintiff's theory of the case is "that just as Taylor approached the back end of the motor car, it parted from its tow, the trailer car. Freed of its burden, the motor car lurched forward, throwing Taylor over its trailing edge and towards the direction he faced and thus into the space between the then uncoupled motor car and trailer car, where, an instant later, he was struck down and run over by the latter vehicle."

We are confronted with this question: Was there any evidence in the record upon which the jury could have found negligence on the part of the defendant which contributed in whole or in part to Taylor's death?

. In Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 415, 93 L.Ed. 497, the court said:

"It is the established rule that in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of a litigant against whom a peremptory instruction has been given."

In Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 744, 90 L.Ed. 916, the court said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

■ We think under the authority of the two cases last cited and Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, 15 N.C.C.A., N.S., 647, that we would be inviting certain reversal if we held that the trial court should have peremptorily taken the case away from the jury under the evidence already set out in this opinion. This is also in accord with our recent cases of Atlanta & St. Andrews Bay Co. v. Burnett, 259 Ala. 688, 68 So.2d 726, and Louisville & N. R. Co. v. Steel, 257 Ala. 474, 59 So.2d 664, where, "We pointed out that in cases brought under the Federal Employers' Liability Act,

this court is controlled by the decisions of the Supreme Court of the United States." [259 Ala. 688, 68 So.2d 730.] The requested charges were properly refused by the court.

■ Assignment of error 23 challenges the action of the court in overruling appellant's objections to the hypothetical question propounded to Mr. Littleton and assignment No. 24 complains of the trial court's action in overruling the motion to exclude Mr. Littleton's answer. The action of the trial court is sustained in Ellerbee v. Atlantic Coast Line R. Co., 258 Ala. 76 [8], 61 So.2d 89, and authorities therein cited.

■ Assignments of error 7, 8 and 11 challenge the action of the trial court in refusing three requested charges dealing with sole proximate cause. These charges were directed to defendant's contention and theory, "that the uncoupling of the cars, and Taylor's death, was not caused by some defect in the coupling device, but that the uncoupling was actually caused by some act or acts by Taylor himself after he had gotten up from where he had been seated safely on the motor car and moved to a place near the rear of the motor car and near the coupling between the motor car and the trailer car." We have carefully considered these charges and the oral charge in conference and we are of the opinion that these charges were adequately covered in the court's oral charge to the jury, to which there were no exceptions. Where the court instructed the jury on the effect of the employee's contributory negligence and on the question of the employee's violation of railroad rules and other acts as being the sole proximate cause of the accident, the court did not err in refusing other instructions in somewhat different language on the same subject. Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S.W.2d 568, 161 A.L.R. 383.

■ Assignment of error No. 1 is directed to the action of the court in refusing to grant appellant's motion for a new trial on the ground that the verdict

**408**

was contrary to the great weight of the evidence. We have already indicated that there was some evidence to support the verdict and "the decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." Cobb v. Malone, 92 Ala. 630, 9 So. 738, 740.

The last assignment of error which was argued, No. 2, is that the verdict is excessive. Taylor's life expectancy was 32.23 years, his take home pay was $210 per month and he was survived by his wife and two minor children. They were entitled to recover for loss of his support and care, plus allowance for his pain and suffering endured between the time of the injury and time of death. Appellant agrees in brief that, "It will be seen that the award of $25,000 is equivalent to the full present value of the amounts shown as contributed for the support of the three dependents during the life expectancy of the widow and the minority of the children and using a reasonable rate of interest in keeping with the testimony of the Actuary, Farmer." Appellant does contend that any recovery must be diminished in proportion to the degree of negligence on the part of Taylor himself. There is no question about there being a company rule which read: "While motor cars or trailer cars are in motion, employees will not be permitted to stand, get on or get off such cars, nor sit with legs between motor car and trailer." Under 45 U.S.C.A. § 53, contributory negligence of the employee shall not bar a recovery, but the damages "shall be diminished by the jury in proportion to the amount of negligence attributable to such employee". See Alabama Great Southern R. Co. v. Baum, 249 Ala. 442, 31 So.2d 366.

The evidence was in conflict as to whether the rule had ever been called to Taylor's attention and witnesses for both plaintiff and defendant agreed that the rule had

been violated by the section foreman a few moments before the accident when the witness Marcus, after throwing a switch, was forced to board the motor car while it was in motion. There was also evidence tending to show that it was customary for the employees to step from the motor car to the trailer car while moving to get a drink of water or to keep the tools from falling off the trailer.

We do not set aside verdicts of juries in cases of this character unless the amount is so excessive, or so grossly inadequate, as to be indicative of prejudice, passion, partiality or corruption on the part of the jury. Alabama Great Southern R. Co. v. Baum, supra.

We will not disturb the verdict here. The cause is due to be affirmed and it is so ordered.

Affirmed.

LAWSON, SIMPSON and STAKELY, JJ., concur.