120 So.2d 884

### LOUISVILLE & NASHVILLE RAILROAD COMPANY

v.

### J. C. McELVEEN.

6 Div. 483.

Supreme Court of Alabama.

May 26, 1960.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

Rives, Peterson, Pettus & Conway and Edgar M. Elliott, III, Birmingham, for appellee.

MERRILL, Justice.

Appellee sued appellant in two counts, claiming $15,000 as damages under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. Count 1 charged the defendant with negligence in failing to exercise reasonable care to furnish and maintain plaintiff a reasonably safe place to perform his work. Count 2 charged the agents, officers or employees of the defendant with negligence by reason of a defect or insufficiency in connection with its cars, machinery, track, roadbed and other equipment.

Demurrers being overruled, a plea in short by consent was filed and after hearing the evidence, the jury returned the verdict in favor of plaintiff for $2,400. The motion for a new trial was overruled.

Appellant argues that it was entitled to the affirmative charge with hypothesis, contending "that the record is devoid of a scintilla of evidence either that the defendant failed to exercise reasonable care to furnish plaintiff with a safe place to work, as charged in Count One, or that there was any defect or insufficiency due to the negligence of the defendant in its" equipment, as charged in Count 2. Appellant also contends that plaintiff's negligence was the sole proximate cause of his own injury.

The accident happened at Wellington in Calhoun County. The train was switching and the conductor instructed appellee, the brakeman, to cut two rear cars off in the "clear" of the main line. This means to leave the cars clear of the main line on the transfer track. The proper and customary clearance point and the one always used is the derailer. Appellee was riding on a step of a boxcar and the train was going about ten miles an hour, and when he arrived at a point four or five feet from the derailer, appellee dismounted from the car step into the side of a ditch and he stumbled forward into the derailer switch and suffered his injuries.

We quote, in part, from appellant's statement of the evidence, omitting references to the pages of the transcript:

"* * * Plaintiff stepped off of this moving train above the derailer at about six. o'clock in the morning, before the sun came up but after it had begun getting light. It was a cold morning. When he got off the car he lost his balance or something, he then fell. He was trying to catch his balance when he fell over the derailer and crossties, injuring himself. The place where plaintiff chose to step off of the train was not level and there was a ditch running alongside the track .at that place. Plaintiff said he had to step into the ditch when he stepped off of the train, and that he was trying to get his balance when he injured his leg on the crossties over the derailer. He continued to work till after the cars

had been switched and continued to work thereafter without losing any time from his job.

"On cross-examination, plaintiff admitted that he knew the derail was located at that place and that he had taken it off when he went in there before the cars were switched. He knew that the ditch was there and he, as brakeman, was the person charged with the responsibility of signalling the engineer of the train to stop the train preparatory to switching the cars. The place where he got off of the train was more convenient for him and easier for him to cut the cars and set the derailer. He did not have to get off of the train while it was moving and he had authority to stop the train at a place where it is safe for him to get off. When asked if he got off of the train there because he did not consider the place unsafe, plaintiff answered, 'I didn't figure I was going to fall.' That was the way he customarily got off and switched cars but the L. & N. Railroad 'wouldn't want us to get off somewhere we would get hurt or killed, or something.' When asked if he would stop the train at a place where he considered it to be dangerous and unsafe he replied: 'I don't know if I would stop the train, but I wouldn't get off there. I wouldn't get off anywhere where I thought I was going to get hurt.'"

The conductor testified that it was customary to get off the train near the derailer in such an operation, and was customary to get off moving cars while traveling ten miles an hour.

Pictures of the derailer, the switch, the side of the track where appellee alighted and the ditch were introduced into evidence and we have them before us.

The defendant chose not to put any witnesses on the stand.

Appellant contends that "the record is devoid of any evidence justifying submission of the case to the jury" upon either count, and assigns as error the refusal of the trial court to give the affirmative charge with hypothesis for the defendant.

■ In cases brought under the Federal Employers' Liability Act, this court is controlled by decisions of the Supreme Court of the United States. Louisville & Nashville Railroad Co. v. Cooke, 267 Ala. 424, 103 So.2d 791; Atlantic Coast Line R. Co. v. McMoy, 261 Ala. 66, 73 So.2d 85; Atlantic Coast Line R. Co. v. Taylor, 260 Ala. 401, 71 So.2d 27.

■ We conclude that the evidence, including pictures, presented a jury question under the recent decisions of the Federal Supreme Court. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Webb v. Illinois Central R. Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, and many other cases brought under the Federal Employers' Liability Act.

■ Where the affirmative charge is refused the defendant in a case under the Act, the entire evidence is viewed in its most favorable aspect to the plaintiff, and when this is done and there is a reasonable inference adverse to the party requesting the charge, such charge is properly refused. Louisville & Nashville Railroad Co. v. Cooke, 267 Ala. 424, 103 So.2d 791; Atlantic Coast Line R. Co. v. Taylor, 260 Ala. 401, 71 So.2d 27.

As stated in the last-cited case, we would be inviting certain reversal if we held that the trial court should have withdrawn the case from the jury under the evidence, in view of the many decisions of the Federal Supreme Court on this subject.

But appellant argues that the recent case of Inman v. Baltimore and Ohio Railroad Co., 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d

198, "demonstrates that in the U. S. Supreme Court the pendulum has, as it was bound to do, reached its most extreme position in one direction and is beginning to swing back."

A brief summary of the Inman case indicates that the plaintiff, a railroad crossing watchman, after flagging traffic for a passing train, in pursuance of his instructions, turned to inspect the passing train for hot boxes. The intersection was lighted, the crossing lights and bells were working and the plaintiff had in his hand a lighted lantern. An intoxicated driver, after running a traffic stop sign, knocked down and ran over the plaintiff. The trial court submitted the issue of negligence to the jury who found the railroad negligent in failing to afford enough protection to plaintiff. The Court of Appeals of Ohio reversed, stating that there was a complete failure of proof to establish negligence, and the United States Supreme Court affirmed.

It is clear that the facts in Inman are vastly different from those here under consideration. But the Federal Supreme Court has decided another case since the Inman case, where the employee was descending the ladder of a boxcar, slipped and fell to the ground. The pendulum seems to have remained where it was. Davis v. Virginian Railway Co., 361 U.S. 354, 80 S.Ct. 387, 390, 4 L.Ed.2d 366. We note that Mr. Justice Harlan states in the first sentence of his dissenting opinion " * * * this decision provides another example of the futility of continuing to bring here for review cases of this kind."

The judgment of the lower court is affirmed.

Affirmed.

LAWSON, STAKELY and GOODWYN, JJ., concur.