ROBERTS v. VAN CLEAVE.

No. 34218.   Oct. 9, 1951.

Rehearing Denied Oct. 30, 1951.

Application for Leave to File Second Petition For Rehearing Denied Nov. 20, 1951.

237 P. 2d 892.

Tolbert & Gillespie, Hobart, and U. V. Jones, Snyder, for plaintiff in error.

Carder & Carder, Hobart, and McLaury & McLaury, Snyder, for defendant in error.

HALLEY, V. C. J. This is an action by Louise Van Cleave against Floyd Roberts for actual and exemplary damages for breach of promise to marry,

and to recover money loaned by plaintiff to defendant. We shall refer to the parties as they appeared in the trial court.

Plaintiff alleged that she was a chaste unmarried female until about June 10, 1945, when she and defendant agreed to be married sometime in the fall of 1945, and that such promise of marriage continued until about October, 1947, when the defendant refused to carry out his agreement. That shortly after their agreement to marry in June, 1945, and upon the insistence of the defendant, and in consideration of his promise to marry her, plaintiff submitted to sexual intercourse with the defendant, and continued such acts until October, 1946, when she became pregnant, and on July 19, 1947, she gave birth to a female child, of which she claimed defendant was the father.

Plaintiff further alleged that after she became engaged to marry the defendant, he borrowed $1,600 from her and has failed to repay it. She prayed for judgment for $25,000 actual damages and for $1,600 in money loaned, and also prayed for $15,000 exemplary damages.

Defendant admitted that he knew the plaintiff for many years and had "dates" with her, but denied that he ever promised to marry her or had sexual intercourse with her. He admitted that he had borrowed $1,600 from the plaintiff, but alleged that he had repaid $800, and tendered the balance, with interest. He alleged that the balance would have been repaid sooner but for the fact that the plaintiff was claiming that the sum he had paid on the loan was for the expenses of plaintiff in connection with the birth of her child, which she claimed to be the child of defendant, and which the defendant denied. Defendant moved to strike from plaintiff's petition that portion relative to the loan, on the ground that it constituted a misjoinder of causes of action. This motion was denied.

At the conclusion of the evidence, the jury returned a verdict for plaintiff for $26,600 actual damages, being all that plaintiff prayed for under her first cause of action, but rendered no verdict for exemplary damages.

The defendant has appealed, and presents seven grounds for reversal. It is first contended that the court erred in not defining the term "seduction" in its instructions to the jury, and that such omission was called to the attention of the court in requested instructions by the defendant. A part of instruction No. 9, given by the court, is as follows:

" . . . if in this case you further find from the evidence that the defendant by means of his promise to marry the plaintiff seduced her and had sexual relationship with her, and begot her with a child, and that a child was born as a result of such seduction, you may take that into consideration and should allow a reasonable sum of damages therefor, and if you should further find and believe from the evidence that the defendant's attempt to prove unchaste and improper relations with others on the part of the plaintiff was not made in good faith or was made without reasonable cause to believe that such charge could be proved, then such charge and the failure on the part of the defendant to prove them may be taken and considered by you in aggravation of the damages in the case, and if you find for the plaintiff you will assess her compensatory damages as such amount as you believe she is entitled to recover, under the law and the evidence, not exceeding the sum of $26,600.00 with interest as provided by law."

Defendant claims that this instruction probably would be proper if the court had properly instructed the jury as to what constituted seduction, as distinguished from sexual intercourse, and that such failure left the matter to the caprice and whim of the jury as to what was seduction, as a matter of law. Plaintiff contends that under the ruling of this court in Elam v. Beverly, 191 Okla. 375, 129 P.2d 838, there was no duty on the part of the court on its own motion to give an instruction advising the jury as to the legal import of the word "seduction", because the

defendant, both in his motion for new trial and in his petition in error, complained of the failure of the court to give several requested instructions. However, in the Elam case, supra, the complaint covered failure of the court to instruct the jury upon the essential and substantial issues in that case. In Butts v. Anthis, 181 Okla. 276, 73 P.2d 843, the rule is announced in the fourth syllabus as follows:

"Where several instructions to the jury are requested, and the court refuses to give any of them, a general exception to such refusal will not be sufficient on appeal to raise in this court the correctness of such ruling."

In the Elam case, supra, the fundamental issue was the negligence of the driver, and in discussing the Butts case, supra, the court said:

"The defendants are correct in this statement of the facts and rule insofar as the argument goes, but the defendants have overlooked the fact that plaintiff assigned in his motion for new trial and petition in error a general assignment that the court erred in failing to give instructions on its own motion that covered substantial and fundamental issues in the case, and which omission the plaintiff called to the attention of the court by the nature of certain requested instructions."

In the instant case, the essential and fundamental issue was whether or not there was a breach of promise to marry. The seduction feature only affected the measure of damages. It is not an issue "pertaining to the establishment of a cause of action or defense." It is certainly an important issue affecting the measure of damages. Had the defendant requested an instruction specifically calling the attention of the court to the failure of its instructions to define the word "seduction", we are inclined to the view that such instruction should have been given, but in the absence of such requested instruction we conclude that the court did not commit reversible error in this respect.

In National Tank Co. v. Scott, 191 Okla. 613, 130 P.2d 316, it is said in the body of the opinion:

"And we say that the 'facts and issues' as here used mean only those issues pertaining to the establishment of the cause of action or defense. Such issues do not include the mere measure of damages to be applied in determining the amount of recovery on the cause of action. The measure of damages does not constitute a fundamental issue in the prosecution of a cause of action, and an erroneous instruction thereon does not amount to fundamental error within the meaning of the rule stated in Mason v. McNeal, above. (187 Okla. 31, 100 P.2d 451.)"

Defendant complains that the court erred in refusing to give defendant's requested instructions Nos. 3, 6, and 7. Plaintiff contends that since defendant made only a general exception to the action of the court in his motion for new trial and in his petition in error, the matter is not properly submitted on appeal, and cites Butts v. Anthis and Elam v. Beverly, supra. Instruction No. 3 in effect tells the jury that it must find that the plaintiff and the defendant were not equally wrong before it could award damages to the plaintiff for seduction. In sec. 1120, 21 O. S. 1941, seduction under promise of marriage is made a crime, and a civil action for damages for seduction is provided under sec. 3, 23 O. S. 1941. Johnson v. Harris, 187 Okla. 239, 102 P.2d 940. Under the testimony of plaintiff, which evidently was believed by the jury, when she submitted to sexual intercourse, it was under a promise of marriage, and the question of equality of wrong did not arise, because the defendant denied both the promise of marriage and the sexual intercourse.

Requested instruction No. 6 instructs the jury that what might be considered seduction under one state of facts might, with an older, mentally mature person, with greater intelligence, education, and experience, and under different circumstances, not constitute seduction. Here the plaintiff was a highschool graduate with one year of junior college, 25 or 26 years old, and had worked for more than 30 months in an aircraft factory at Wichita, Kansas, during the

recent war. She then had worked at a cleaning establishment in Snyder, Oklahoma, renting a room and later an entire residence for some months. She admitted that she had engaged in sexual intercourse with the defendant over a period of some 18 months; that such acts occurred "most every time they had a date" which was two or three times a week; that such acts were so numerous that she could not estimate the number. She was not a young and inexperienced girl. All these facts were before the jury and doubtless were considered by the jury. She steadfastly clung to the assertion that each act was at the defendant's insistence, and we find no error in refusing this requested instruction.

Requested instruction No. 7 asks that the jury be instructed that if the plaintiff consented to acts of intercourse merely to gratify her own or defendant's lust, or that of both of them, she cannot recover.

These requested instructions all bear upon some phase of seduction. The fundamental issue in this case is breach of promise to marry. These requested instructions fail to request the court to define the word "seduction", and we find no error in refusing to submit them to the jury.

Defendant complains of the court's instruction No. 9 because it contains the statement " . . . that the defendant's attempt to prove unchaste and improper relations with others on the part of the plaintiff, was made without reasonable cause to believe that such charge could be proved, then such charge and failure on the part of the defendant to prove it may be taken and considered by you in aggravation of the damages." It is contended that the use of the word "attempt" implies that the defendant had tried but failed to prove that the plaintiff had had unchaste and improper relations with others, and that such attempt and failure should be considered by the jury in aggravation of the damages. The court further instructed the jury that if it

found that the plaintiff was seduced and begotten with child as the result of such seduction, "you may take that into consideration and should allow a reasonable sum of damages therefor." Defendant claims that this instruction invaded the province of the jury. The phrase "may allow", rather than "should allow", certainly would be preferable. Defendant cites upon this point the case of Osmun v. Winters, 25 Ore. 260, 35 P. 250, and 4 R.C.L. Breach of Promise, sec. 17, p. 160 (8 Am. Jur., sec. 28, p. 870), and quotes from the latter as follows:

"Although seduction may be shown in aggravation of damages in a breach of promise suit, still it seems that the jury is not obliged to consider it in estimating damages."

We think the rule properly applicable to this case is found in 11 C.J.S., Breach of Marriage Promise, sec. 43(c), p. 812, where it is said:

"Although it is held otherwise in a few jurisdictions, the weight of authority supports the view that it is proper to take into consideration, in aggravation of damages, the fact that the defendant seduced the plaintiff under the promise of marriage, and the fact that the plaintiff has a statutory right of action for the seduction does not preclude its consideration in estimating damages for the breach of promise to marry."

Defendant claims that he made no effort to show that plaintiff "had unchaste relations with Louis Reevis or anyone else." We are unable to agree with this statement. The evidence is undisputed that plaintiff was unmarried, but had given birth to a child. Defendant denied that he was the father, or that he had ever had sexual relations with the plaintiff. It must follow that someone had had such relations with the plaintiff. The defendant injected the association of the plaintiff with Louis Reevis, a married man, into the case. Defendant testified that plaintiff's relations with Reevis were such as to cause him to break off his own relations with her. Louis Reevis was the only other man charged with so much

as dining and car-riding with the plaintiff. Since some man had to be the father of plaintiff's child, and since she associated only with defendant and Reevis, and defendant denied sexual intercourse with her, it must follow that the finger of suspicion would point toward Louis Reevis. Again, defendant moved that plaintiff submit to a blood test to prove non-paternity of himself, which it failed to do. Such tests do not prove paternity, but they may be evidence of non-paternity.

Defendant requested instruction No. 4, which the court gave as instruction No. 4. It is, in part, as follows:

"The jury are instructed that even if you find from a fair preponderance of the evidence that the plaintiff and defendant did enter into an agreement to marry, but subsequent thereto, the plaintiff conducted herself in such a manner as would cause a reasonably prudent man to believe that she was guilty of immoral conduct with others than the defendant, and on discovering such conduct and on account thereof, the defendant would under such circumstances be justified in so renouncing said agreement to marry, and the plaintiff is not entitled to damages . . ."

We consider that the defendant received fair treatment from the court on this question.

Under Proposition VI, defendant submits that there is a misjoinder of causes of action. Plaintiff sued for actual damages for breach of promise to marry, and joins therewith recovery of $1,600 admittedly loaned by plaintiff to defendant in 1946. The question of misjoinder was raised by the defendant by what is termed a "motion to strike", which the court overruled. Plaintiff argues that this was not a proper way to raise this question, and cites cases holding that it can be raised only by special demurrer or answer. However, it is said in Corliss v. Davison, 183 Okla. 618, 84 P.2d 70, in the first syllabus:

"It is not what a pleading is called or captioned that necessarily determines its character, but same may be determined by the matters and facts alleged therein."

The court at first sustained what was termed a "motion to strike", but later denied it, and in its order of July 14, 1948, it sustained defendant's motion to strike paragraph 4 of plaintiff's petition on the ground "that the same was improperly joined to the other causes of action in said petition", and overruled such motion as one attacking the petition "on the grounds of improper joinder of causes of action." We conclude that the court properly considered the motion to strike as a special demurrer, and hence the matter is properly submitted on appeal. The petition of the plaintiff undertakes to connect the loan of money by plaintiff to defendant with their agreement to marry and their plans made thereunder, and alleges it was part of defendant's scheme to deceive and defraud plaintiff of her good name and her savings earned during the war. The testimony in regard to that loan, and the fact that plaintiff testified that defendant failed to repay her until she requested payment and told him that she had to have the money to support herself and her child, was bound to prejudice the jury against the defendant, but these facts appear to have been the result of his own conduct. The loan must have been made on account of the promise to marry, and there is ample evidence that the loan was induced by such promise.

At the close of instruction No. 9, the court advised the jury that it might award the plaintiff compensatory damages "not in excess of $26,600.00." The plaintiff prayed for only $25,000 as compensatory damages, and the $1,600 additional prayed for in her first cause of action was for money loaned. The jury included the entire $1,600 in the sum awarded as compensatory damages. It was admitted that defendant had paid to plaintiff $800, and the fact that she prayed for only $25,000 as compensatory damages shows conclusively that the jury was misled by this instruction.

The court permitted the child of the plaintiff, and also the child of Louis

Reevis and his wife, to be exhibited to the jury. The defendant complains of this action under Propositions 4 and 5, which we shall consider together.

The child of Louise Van Cleave was only eighteen months of age at the time of the trial. The child of Louis Reevis and his wife was three years old. There appears to be a conflict in the authorities on when a child is old enough to warrant its being exhibited to a jury where the question of its paternity is in issue. In Ratzlaff v. State, 102 Okla. 263, 229 P. 278, a bastardy proceeding, the court allowed a child eleven months old to be introduced in evidence, and the mother, the complaining witness, was permitted to point out certain points of resemblance between the child and the defendant. This court held this procedure to constitute reversible error, and said, in its fourth syllabus:

"Rarely in a case should the court permit a child to be exhibited to the jury for the purpose of making its appearance evidence of its paternity, and in no case should this be done unless the child has reached that age and point of development where its features and corporal traits have become well and finally fixed and settled."

However, in Lawhead v. State, 99 Okla. 197, 226 P. 376, this court approved the exhibition of a child only seven weeks old before a jury, and also permitted a witness to point out to the jury the resemblance between the child and its alleged father. It appears that the child had unusual points or molds of its ears. The court announced the rule in the second syllabus as follows:

"In the trial of a bastardy case, where the child is offered in evidence on the issue as to whether or not the defendant is the father, the sound rule is to admit the facts of similarity of specific traits, however presented, provided that the child is, in the opinion of the trial court, old enough to possess settled features or other corporal indications."

We think the better rule is that the matter should rest largely in the discretion of the trial court. The defendant was before the jury, and denied that he was the father of the child. The plaintiff testified that he was the father. The child was admitted in evidence, but no testimony was offered to point out features of resemblance or non-resemblance between it and the defendant, and no comment or opinion evidence was offered as to whether or not it was possessed of specific traits that are not likely to change, or was old enough to possess settled features or other corporal traits. Defendant claims that this was not done because it could not be done.

Defendant had injected into the case the association of the plaintiff with Louis Reevis, a married man, and requested that instruction No. 4 be given to the jury. The court included this instruction in its charge to the jury as instruction No. 4. In effect, it told the jury that if it found from the evidence that plaintiff and defendant had entered into an agreement to marry, but afterwards plaintiff conducted herself in such manner as would cause a reasonably prudent man to believe that she was guilty of immoral conduct with others than the defendant, the defendant was justified in refusing to marry plaintiff upon the discovery of such facts. It was not even remotely suggested that the plaintiff was guilty of immoral conduct with anyone other than the defendant and Louis Reevis. The alleged association with Reevis was injected into the case by the defendant. The Reevis child, which was exhibited before the jury, was three years of age, and was admittedly the child of Louis Reevis and his wife, and it is difficult to understand on what theory the court permitted the exhibition of this child to the jury. Louis Reevis was very dark, and his wife a decided blonde. The physical characteristics of their child are not shown in the record. We think this child's exhibition to the jury was not relevant, but that it did not constitute reversible error.

The defendant contends that the verdict of the jury was excessive and the

result of passion and prejudice. We have examined the record carefully and are unable to agree with this contention. The verdict was for a large amount in a case of this character, but this court has often announced that it will consider economic conditions and the reduced purchasing power of the dollar in passing upon whether or not a verdict was excessive. There is no claim whatever of any misconduct on the part of the jury. Sec. 40, 23 O. S. 1941, provides that:

"The damages for the breach of a promise of marriage rest in the sound discretion of the jury."

We do believe, however, that the court erred in rendering a judgment for $26,600 on plaintiff's first cause of action, when she prayed for only $25,000 as compensatory damages, and it was admitted that $800 of the $1,600 loan had been paid. This fact was nowhere mentioned in the instructions to the jury. The defendant was entitled to credit for the $800 paid to the plaintiff, either as a credit on the loan or as $800 already advanced and paid by him to apply on the expenses of plaintiff accruing from seduction and childbirth, as claimed by plaintiff.

The jury could have and should have been instructed on this issue. The same result can be reached by reducing the judgment in the sum of $800 on the verdict rendered.

We find no error that would require a reversal and remand for a new trial. Section 1068, 22 O. S. 1941, provides that no judgment shall be set aside or a new trial granted by an appellate court of this state, civil or criminal, on the ground of erroneous instructions to the jury, unless, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. We conclude that such errors as occurred in this case do not warrant a reversal or a new trial.

The judgment should be reduced by $800, and as so modified is affirmed.

CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. ARNOLD, C. J., dissents.