MIDLAND VALLEY RAILROAD COM-
PANY, a Corporation, Plaintiff in
Error,

v.

Jess MANIOS, Defendant in Error.

No. 36948.

Supreme Court of Oklahoma.

Dec. 4, 1956.

Rehearing Denied Feb. 19, 1957.

James D. Gibson, Muskogee, Harry L. Dyer, William K. Powers, Tulsa, for plaintiff in error.

Poe, Murdock & Langford, Floyd Walker, Tulsa, for defendant in error.

JACKSON, Justice.

Defendant in error, an employee of one of plaintiff in error's section crews, while in the course of his employment severely injured his back. He brought this action for damages in the District Court in and for Tulsa County, State of Oklahoma, under the Federal Employers' Liability Act, 35 Stat. 65, 36 Stat. 291, 53 Stat. 1404 and 45 U.S.C.A. § 51 et seq.

Upon a jury trial a verdict was returned in favor of defendant in error in the sum of $19,100. Judgment being entered in conformity with the verdict, the plaintiff in error appeals. Hereafter the parties will be referred to as they appeared in the trial court.

Plaintiff bases his cause of action upon the alleged negligence of defendant in failing to furnish safe tools with which to do the work assigned him; and defendant's failure to furnish sufficient employ-

ees to perform the work in which plaintiff was then engaged. Defendant for reversal of the judgment contends that plaintiff has not made out a submissible case either as to negligence or as to causation. Additional grounds are alleged errors in instructions given and the refusal to give requested instructions, and the further error in permitting plaintiff to testify he was a married man and the father of three children.

On the day of the accident plaintiff was engaged in removing old and worn track ties. New ties had been placed along the track to replace the defective ties. The fill of the roadbed was steep so one end of the tie was down the fill and the other end was upon the shoulder some three feet from the rail. Plaintiff was furnished iron tongs to use in pulling a tie up to and under the rails. If the fill was level one employee could pull the tie in place, but where the fill slanted down it became difficult, if not impossible, for one man to pull it in place with the tongs. Prior to the date of the accident, defendant had furnished two men to remove and place the new ties. One crew at work was composed of two employees, but plaintiff was not furnished a fellow employee to assist in the work being performed. The ties being installed were 8 feet long and about six by ten inches in width, were coated with creosote and weighed from 150 to 175 lbs. The tongs furnished plaintiff were old and worn, the points were dull and would not hold the ties when the pull was made. On Jan. 26, 1953 and while attempting to pull a tie in position up to the rail, the tongs slipped from the tie and plaintiff fell backwards striking his back against a rail, resulting in the injuries more fully referred to later. Plaintiff continued in defendant's employment until August 11, 1953. During said time he generally performed the same kind of work as performed prior to the accident. During this period plaintiff claimed he suffered continuous pain from his back injury, which finally necessitated his leaving defendant's employment on the latter date.

The medical testimony of six physicians and surgeons is in conflict as to whether plaintiff's disabilities were caused by the accident occurring in January 1953, or from heat exhaustion occurring on August 11, 1953. A physician testifying in behalf of plaintiff stated that he treated plaintiff in October 1953, and from said examination and diagnosis he concluded plaintiff was suffering from a ruptured intervertebral disc. Plaintiff did not respond to the treatment prescribed and his physician suggested that he submit himself to a specialist in neurosurgery. The later surgeon examined plaintiff in November 1953, and from such examination and x-rays taken of the patient the surgeon was of the opinion that the interspace between bones of the spine next to the pelvis or sacrum and the fifth lumbar vertebrae was narrowed from a normal position of one-half centimeter to a one-fourth centimeter, indicating an involvement of the disc and indicating a soft substance between the bones of the spine.

A physician called by the defendant testified that plaintiff was sent to his office by defendant's local surgeon for an examination; that plaintiff complained of severe headaches, backaches and aches in his legs, and plaintiff advised him that on August 11, 1953, he fainted while at work. This physician concluded that the then physical condition of the patient resulted from heat exhaustion.

Several other physicians who subsequently examined plaintiff, testified that from their examinations and diagnosis they found plaintiff in a very nervous condition and based upon plaintiff's statement that he had fainted on August 11th while at work, they were of the opinion that the patient suffered from heat exhaustion. A physician who interpreted the x-rays gave it as his opinion that the interspace narrowing, as well as the curvature of the spine, was a normal condition of the patient, not resulting from disease or injury.

We cannot agree with defendant's contention that plaintiff has failed to make out a submissible case either as to negligence or as to causation.

The evidence supports the general verdict that the tong furnished plaintiff to drag the tie up to the rail was old and defective in that the points of the tong were not sharp and could not be imbedded into the tie in sufficient depth to be safely employed in dragging the tie up to the rail.

■ Under the Federal Employers' Liability Act, supra, the defendant, a common carrier by railroad engaged in commerce between the States, is liable in damages to its employees resulting in whole or in part from the negligence of any of its officers, agents or employees, by reason of defect or insufficiency, due to its negligence in the maintenance of its track, roadbed or equipment.

Under this record we find substantial evidence to support plaintiff's allegation that defendant was negligent in furnishing plaintiff with a defective tool to do the work. Defendant argues that the evidence does not support the alleged negligence of defendant by failing to furnish a sufficient number of employees to do the work assigned. Defendant had four men in the gang and a foreman. Two men were assigned to one unit; however, plaintiff was the sole employee in his unit, although each unit was performing identical work. Whether defendant was negligent is a question of fact for the jury's determination.

■ The witness Fowler, a former employee of defendant, testified that for years prior to the accident, two men were assigned to each unit of work. Further, that it was practically impossible for one man to pull a tie lying on a grade as the ties were placed at the time of the accident. If the work assigned could have been safely performed in another manner or method, an issue of fact is presented submissible on the question of negligence.

■ In the case of Stone v. New York, Chicago & St. Louis Railroad Co., reported in 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441, the Supreme Court of the United States had under consideration whether the proof of negligence sustained the judgment, and in that case the court stated that where an employee is injured and the proof submitted disclosed the work could be done in alternative methods, and that more men were usually used in the work, such proof established a sufficient causal connection by the failure to furnish sufficient workmen to require submission of the case to the jury. It is for the jury to resolve debatable questions of fact in which fair-minded men would differ.

■■ In consideration of the sufficiency of the evidence it is enough that we find an evidentiary basis for the jury's verdict in one or more of the grounds relied upon, for the reason the Federal Employers' Liability Act only requires proof that the injury resulted in part from the negligence charged, even though there be a plurality of causes.

In Chicago, Rock Island & Pacific Railroad Co. v. Wright, Okl., 278 P.2d 830, one of the acts of negligence charged was that the defendant did not furnish a sufficient number of men to do the work in placing the railroad rail upon the ties. Proof was submitted that six men using tongs were employed in moving the rail at the time of the accident, although customarily twelve men were usually so employed.

Another act of negligence alleged in the cited cases was the defendant's failure to furnish suitable tongs to carry the rails. The judgment of the trial court was affirmed upon the ground that the evidence shows that a method of installation different from the one used was available, and that the use of the defective tongs by the employee did not bar his recovery, notwithstanding he had advised his foreman of their defective condition.

Defendant urges with much force that the trial court erred in permitting the introduction of evidence to the effect that the plaintiff was a married man having a wife and three children. The Federal Employers' Liability Act provides that the jurisdiction of the courts of the United States

shall be concurrent with that of the courts of the several States. 62 Stat. 989, 45 U. S.C.A. § 56.

■ It has frequently been held that in an action under the Federal Employers' Liability Act the question of substantive liability must be determined according to the provisions of the act and authoritative Federal decisions construing its provisions. But where action is instituted in State courts, the State's regulations and rulings as to procedure will control, except where the act otherwise provides. Central Vermont Railroad Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433; Chesapeake & Ohio Railroad Co. v. De Atley, 241 U.S. 310, 36 S.Ct. 564, 60 L.Ed. 1016.

■ The admissibility of evidence in an action under the Federal Employers' Liability Act is a procedural matter, and so governed by the local law of the forum. Joice v. Missouri-Kansas-Texas Railroad Co., 354 Mo. 439, 189 S.W.2d 568, 161 A.L. R. 383.

The record shows the following questions propounded to the plaintiff and his answers thereto:

"Q. Are you married? A. Yes Sir.

"Q. Do you have any children? A. Wife and three kids."

After the last answer was made defendant objected on the ground of its incompetency, irrelevancy and immateriality. The objection was overruled and defendant noted an exception. The record does not disclose that counsel made an objection that the evidence was incompetent under any provision of the Federal Employers' Liability Act, nor did he move to withdraw the evidence from the jury. Neither did counsel offer an instruction requesting the jury not to consider said evidence. Defendant's motion for a new trial did not challenge the court's attention to the alleged error.

■ Under these circumstances we are persuaded that the questions and answers, though improper, did not prejudicially affect defendant's rights. Title 22 O.S. 1951 § 1068, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

In construing Sec. 1068, in Clover v Neely, 116 Okl. 155, 243 P. 758, we held:

"The admission of incompetent evidence by the trial court will not warrant the reversal of a judgment supported by competent evidence, unless the Supreme Court can say, upon an examination of the entire record, that a miscarriage of justice has probably resulted, or a statutory or constitutional right of the complaining party has been violated."

Complaint is made of the Court's Instruction No. 14. In that instruction the court advised the jury that recognized tables of mortality show the life expectancy of an average healthy man of plaintiff's age at the time of the injury, is 20.2, but that said tables were not conclusive.

■ We do not read Jones v. Eppler, Okl., 266 P.2d 451, as sustaining defendant's contention that the instruction is so erroneous as to cause prejudicial error. All that the case holds is that Standard life tables, if properly established, are admissible in evidence in personal injury cases where injuries are permanent in their character.

Objection is further made that Instruction No. 9 imposes a duty on defendant to furnish its employees with tools which are reasonably safe, and a like duty to furnish a sufficient number of employees to do the work in a safe manner. If the instruction

is given a critical analysis, it is subject to some criticism. Defendant contends that the instruction tells the jury "that the law imposes * * * duties upon a railroad * * * to protect the employees of the railroad and to carry out the purpose of the Federal Employers' Liability Act." In other words, making the railroad company an insurer of their safety.

 Both State and Federal cases announce the rule that the employer is not held to an absolute responsibility, but only to the duty to exercise reasonable or ordinary care in the furnishing of reasonably safe tools and a sufficient number of men to conduct the work with reasonable safety. Argument of counsel does not cite any cases from this court which supports his contention that the instruction in itself warrants a reversal of the case.

We conclude that the court's instructions as a whole fairly submitted the law of the case as against defendant's contention of reversible errors. Accordingly, the judgment of the District Court is affirmed.