**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a Corporation, Plaintiff in Error,**

v.

**Jay W. MILLER, Defendant in Error.**

No. 42802.

Supreme Court of Oklahoma.

May 25, 1971.

Rehearing Denied July 6, 1971.

William A. Thie, Bonds, Matthews & Mason, A. Camp Bonds, Tom R. Mason, Muskogee, for plaintiff in error.

Stipe, Gossett & Stipe, McAlester, James E. Driscoll, Seminole, for defendant in error.

DAVISON, Vice Chief Justice.

Defendant in error, as plaintiff, an employee of plaintiff in error, defendant, as a switchman received an injury arising out of the course of his employment. He brought this action for damages in the District Court of Pittsburg County, Oklahoma, under the Federal Employers' Liability Act, as set forth in Title 45 U.S.C.A. § 51 et seq.

The parties will hereafter be referred to as they appeared in the trial court.

The defendant is a railroad corporation and is engaged in the operation of a system of railways in the State of Oklahoma and other states. The plaintiff received his injuries in Muskogee County. Defendant's lines run through both Muskogee and Pittsburg Counties, thus giving Pittsburg County proper venue of the action.

Upon a jury trial a verdict was rendered in favor of the plaintiff in the sum of $99,000.00. Judgment thereon was entered on the verdict, motion for new trial was denied and the defendant has perfected this appeal.

Plaintiff bases his cause of action upon the alleged negligence of defendant in the following particulars: (1) failure to provide and maintain for plaintiff a reasonably safe place to work; (2) failure to make timely and adequate inspection of railroad cars under its supervision and control; (3) in negligently permitting a switching movement involving two railroad cars which defendant knew, or in the exercise of ordinary diligence, should have known, of the defective condition of said cars; (4) failure to provide a reasonably safe method of carrying out the switching movement, and (5) failure to maintain the strictest supervision to protect plaintiff from injury in violation of rules and regulations promulgated by defendant.

The defendant answered by way of a general denial, and then alleged that plaintiff had knowledge of the equipment he was working on, denying any negligence on the part of defendant, and affirmatively alleging negligence and contributory negligence on the part of plaintiff.

Plaintiff's petition alleged that while he was switching four (4) cars of pipe and one loaded boxcar to connect with other cars, pursuant to orders, he rode one of the pipe cars and made the coupling and the cars were in a stopped position; that he had used the brake which was on the west side of the car on which he was riding and, after the connection and stopped position of the cars, he was attempting to go from the west side of the car to the ground on the east

side of the car for the purpose of lantern signalling the engineer; that the car on which he had been riding was a newly, specially built car for hauling pipe and that said car was defective in that, since it was equipped with a cushion draw bar automatic coupler, it was the customary practice in the railroad industry to have a plate or walkway extending horizontally and flush with the bottom of the ladder extending downward from the braking mechanism to the side of the cushion draw bar automatic coupler and above the automatic coupler mechanism and that the new car was not so safely equipped.

Plaintiff further alleged that there was a complete absence of lettering or signs on the newly constructed pipe cars warning that said cars were equipped with cushion draw bars, and that plaintiff, without knowledge of the defective cars so maintained and permitted by defendant to be used in the switching operation, stepped upon the coupler under the misapprehension that the automatic coupler was the type ordinarily used; that in the course of crossing over said coupler, stepped on the draw gear that looked solid, with his left foot, causing the left foot to be trapped and causing him to step on the coupler with his right foot with resultant injury to both feet.

Certain undisputed facts proven by plaintiff were that he was employed by defendant as a switchman in the defendant's yard at Muskogee; that he was switching four (4) cars of pipe classified as a "shifting load," under direct order of his foreman; that the injury happened soon after dark and the switching crew were using lanterns; that the involved switch track ran slightly downgrade in a north-south direction; that all signals made by the crewmen, by means of a lantern, were given from the east side of said tracks due to the fact that the only person on the switch engine was the engineer who was sitting on the right of the engine cab, being the east side.

That leading up to plaintiff's injury the switching crew was in the process of adding cars to a cut-off of cars for the purpose of making up a train. The order given to plaintiff by his foreman was to cross over from the east side of the track to the west side due to the fact that the brake was on the west side of the car; that the engine to the south would "kick" five cars to plaintiff who was directed to and did ride the second car from the south since it appeared to have a good brake; that these cars were directed to be taken by plaintiff and coupled to the cars situated to the north; the plaintiff perfected the coupling of the cars; that plaintiff had never before seen this type of pipe car.

That the new type of pipe cars here involved, equipped with the new style cushion draw bar automatic coupler, had not, before the accident been seen or used in defendant's yard, and the cars were not equipped with a plate or walkway extending over and across the automatic coupler; and that there were no warning signs of danger on the pipe car or the newly constructed pipe cars. The only sign on the rear end of the car where plaintiff received his injury read "10 inch Freightmaster limit."

Plaintiff testified that after the cars had been coupled the cars had come to a complete stop. It was then necessary for him to cross over to the east side of the track for signalling purposes; that he climbed down the ladder on the left of the pipe car in the usual and customary manner; that in crossing over his left foot became caught in the hydra-cushion drawbar; that he had assumed that since the cars were stopped he could safely cross over to the east side; and that as he attempted to cross the cars did not move but the hydra-cushion drawbar moved in adjusting the slack action or shock input.

Plaintiff further testified that the newly constructed pipe cars did not contain any of the customary signs usually on this type of equipment in that there was no warning of danger upon the cars or in the general area of the coupler and there was no place, such as a cross over, or step, at the end of the car or seal upon which to step; that

he thought he was stepping on the end of the north car with his left foot, but that what seemed to have the appearance of a step or sill at the end of the car was actually the draft gear of the hydro-cushion drawbar; that he was unaware that the marking of "10 Inch Freightmaster limit" meant any sign of danger and that the yard was inadequately lighted.

The deposition of J. A. Irwin, the foreman in the defendant yard at the time of the accident, was taken by plaintiff, and in the absence of said witness at the trial, his testimony was read to the jury and became a part of the record.

This witness testified that the load of pipe was a "shifting" load and that the defendant's rules provided for switching movements of a *shifting* load to be done by "shoving" rather than by "kicking;" that pipe constitutes a shifting load and requires more precaution in moving it which should be done in a slow manner, and "it is quite obvious that I didn't follow the rule on this occasion."

This witness further testified that plaintiff followed the orders given him by witness (foreman) and then answered the following questions, without objections, with the following answers:

"Q. And do you remember at any time ever making the statement to him that if you had of made the direction to shove the car instead of kicking them the accident wouldn't have happened?

A. That is an obvious fact, sir, that had the cars been shoved instead of kicked, the accident could not have happened. There would be no point of denying that. That is an obvious fact.

Q. The reason I asked you, he said that the other day and I just wanted to check with you.

A. We may have had that in a conversation at the hospital. I don't recall the conversation but the fact is obvious that had the man been on the side ladder shoving the cars to make a coupling with his lamp, using the engine for power instead of this hand brake on the car, it would have been impossible for this particular accident to have happened."

Testimony was also introduced by plaintiff pertaining to the difference between "shoving" and "kicking" cars. Shoving cars was described as leaving the cars attached to the engine so that cars are controlled by machinery and by signals on the ground, while kicking was described as cutting the cars from the engine and giving them to a man to manhandle with hand brake power, and that with a shifting load it is safer for the employee and for the shifting load to be shoved and not kicked.

G. M. Setzer, the engineer on the involved train, testified by deposition taken by plaintiff, and in the absence of said witness at the trial his testimony was admitted in evidence. His testimony, without objections, is in part, as follows:

"Q. Mr. Setzer, why is more caution necessary when you have the cushion drawbar type?

A. Well that cushion drawbar, the way I understand it, moves and that's the—the drawbar may not move, but the car body moves back and forth and it could make possible two or maybe three moves back and forth adjusting itself.

Q. In other words, it could do what it did to Mr. Miller's foot?

A. That's right.

Q. And did you know that this could happen with a cushion drawbar, even though the cars had stopped?

A. Yes, sir."

For reversal defendant presents seven propositions of error.

Under its first proposition defendant argues that plaintiff failed to sustain his burden of proof in that he failed to prove actionable negligence and advances two

separate propositions in support of its argument as follows:

"A. Re: The Case on Failure to Provide Safe Method of Switching."

"B. Re: Unsafe Place to Work and Defects in Cars"

These propositions are closely related and will be treated together.

The defendant argues that the evidence was only remotely related to the difference in safety between the method of "kicking" and "shoving" and that the court erred in permitting some of the witnesses to testify as to the safer method as being a conclusion.

■■■ The answer to the argument is found in the case of Beasley v. Bond, 173 Okl. 355, 48 P.2d 299, where the court held that on the issue of whether master provided proper method of accomplishing work in which injured employee was engaged, evidence of better methods is admissible. The plaintiff, with 25 years experience as a switchman, was qualified to testify as an expert witness under the facts presented that the method of shoving was the proper and safer procedure. The qualification of plaintiff on this phase of the case was recognized by the trial court. Chickasha Cotton Oil Co. v. Hancock, Okl., 306 P.2d 330; Midland Valley Railroad Company v. Manios, Okl., 307 P.2d 545.

Also from the testimony of the yard foreman, Irwin, we find that the plaintiff followed his orders exactly in riding and coupling the cars; that such cars as caused the accident had never before been in defendant's yard; he did not examine the cars; he knew the cars were loaded with pipe which constituted a shifting load; that under the company rules the handling of a load of pipe obliges or demands more precaution to handle such cars in a slow manner and stated "It is quite obvious I did not follow the rule."

Further the inspection made by defendant was not adequate in view of defendant's answer to plaintiff's interrogatories, to wit: "Defendant had no knowledge of the type and make of the automatic coupler." The pipe cars were owned by L & N Railroad Company.

■■■ It was the legal duty of the defendant to have discovered that the newly manufactured car was not equipped with the proper cross walk and proper stenciled warning of danger. Shenker v. Baltimore & Ohio Railroad Company, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709; Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 71 S.Ct. 443, 1 L.Ed.2d 493.

We are of the opinion and hold that plaintiff proved actionable negligence.

Defendant's second proposition is that plaintiff's act in violation of his work rules was primary negligence, barring recovery.

The defendant cites and relies on the case of Kurn v. Reese, Admr., 192 Okl. 78, 133 P.2d 880. This case is distinguishable and not controlling under the facts in the present case. In the cited case the plaintiff was the engineer and in full and complete charge of the train. He was the general of the engine. He was operating under the rule that upon entering the yards at Winfield, Kansas, his duty at all times was to drive the engine in such a manner as to be prepared to stop unless he knew or could see that the main track was clear. He was killed when he ran his train into a stopped train. The court held that he was under primary duty to operate his engine safely with regard to the train ahead and that he violated the rule, thus causing the collision. This case followed the cases of St. Louis Southwestern Ry. Co. v. Simpson, 286 U.S. 346, 52 S.Ct. 520, 76 L.Ed. 1152, and Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212.

Defendant urges that plaintiff would not have been injured "had he gone between the cars while they were in motion" or had he alighted to the ground and gone around the cars, or had he kept a proper lookout to see where he was going or what he was stepping on, the injury would not have occurred.

■■■ By such argument defendant overlooks the fact that the rule of primary

negligence is not here involved. The evidence on the part of plaintiff, although disputed by defendant, shows that the cars were completely stopped at the time plaintiff left the car brake. The argument also overlooks the evidence showing that the plaintiff was at all times acting under the orders and directions of his superior. Under the evidence the jury could, and did, find that plaintiff was performing the task at which he was injured as ordered, and was left without a choice of methods of performance. Kansas City Southern Company v. Haynes, Okl., 320 P.2d 404.

Defendant next contends that the trial court erred in admitting into evidence the depositions of certain witnesses with no proper foundation laid.

■ The depositions referred to were given by employees of the defendant who worked in the Muskogee switch yard of the defendant. The depositions were taken after proper notice by plaintiff and were taken in the office of defendant's attorney in the City of Muskogee, Muskogee County, Oklahoma, with counsel for both plaintiff and defendant being present. These witnesses, by deposition, were all residents of Muskogee County. Muskogee County and Pittsburg County are not adjoining counties.

It was not shown that such witnesses were in Pittsburg County at the time when the depositions were introduced in evidence. Defendant's attorney stated that they could be present the next day. At this point the court stated: "If it is going to cause any detriment to the defendant I will recess court, but if it is not we might as well use the time." Whereupon defendant's attorney stated: "Let's proceed your honor, maybe tomorrow we can have him here. * * *"

The above stated evidence satisfies the involved statute for using the depositions. 12 O.S.1961, § 433(1), provides as follows:

"When the witness does not reside in the county where the action or proceeding is pending * * *, or is absent therefrom."

In support of the involved proposition the defendant relies on the case of Roger Givens, Inc. v. Mustex, Inc., Okl., 410 P.2d 42. We cannot see where this case is helpful to defendant. In that case the trial court was satisfied with the showing made as a predicate for admitting of deposition, the deponent not being in the county at the time of trial. This court held that the trial court did not act arbitrarily or err in admitting the deposition under 12 O.S.1961, § 447.

Under the facts we are of the opinion and hold that no error was committed in admitting the depositions in evidence.

Defendant next contends that the court erred in admission of evidence of the cost of a single payment life annuity, under propositions A and B.

■ Under proposition A defendant argues that the evidence relating to the gross income of plaintiff was erroneously admitted into evidence because the income tax upon future earnings was not considered in the court's instructions. The only citation of authority cited by defendant in support of this view is 63 A.L.R.2d 1393. This citation is not beneficial to defendant due to the fact that the annotation cited therein shows the Supreme Court of the United States and every state in the union that has passed on the question, some sixteen, were of the view that income tax consequences should not be considered, because of being too conjectural. Only one state, Connecticut, has held otherwise. This court has not had occasion to pass on the identical question but we now follow the great weight of authority and hold income tax consequences of the injury and award should not be considered under the facts herein presented.

Under proposition B, defendant argues that the cost of an insurance life annuity is improper evidence of damages.

This argument is based on the fact that the witness, Thornley, an experienced life insurance agent, was permitted to testify for plaintiff, over the objection of defendant, that the expectancy of plaintiff, who was

52 years of age at the time of the injury, was 22.03 years and that the cost of a "single payment life annuity" for the sum of $615.00 per month for his expected life span in his company would be $113,713.50 and in several other companies slightly higher. This testimony was based on the fact that plaintiff's average monthly wages, based on payroll figures of past earnings, was $616.00.

In this connection it will be noted that the court gave the following instructions:

"No. 21.

"Testimony has been received that according to certain mortality tables, the plaintiff has an expectancy life of 22.03 years. These tables are not binding or conclusive upon you, but this testimony has been received as an aid to the jury and you will give it such weight as you believe it entitled to in the light of your common sense and experience in the affairs of life. The plaintiff may live beyond his expectancy or, on the other hand, he may die before his expectancy, and you will consider this evidence in connection with all the facts and circumstances of the case. In allowing damages for future loss of earnings or pain and suffering, you will consider only such future loss of earnings or such future pain and suffering as the evidence establishes with reasonable certainty, reducing any damages for loss of future earnings to their present cash value and making adequate allowance for the earning power of money."

"No. 22.

"You are instructed that evidence relative to the cost of single premium life annuity policies has been introduced in evidence, but such evidence is not binding on the jury. Such tables and policies are made from a tabulation of results of combined actual experience of American Life Insurance Companies, and are to be given such weight, if any, you desire to give them under the evidence herein, and

under the rules laid down in the next preceding instruction."

Neither of the above instructions were excepted to by defendant and defendant offered no additional instructions on the measure of damages.

■ We have held that life annuity tables, if properly established and authenticated, are admissible in evidence in personal injury cases of permanent partial or total destruction of the earning capacity of the person negligently injured. Continental Oil Company v. Elias, Okl., 307 P.2d 849; Jones v. Eppler, Okl., 266 P.2d 451; also see Wiles v. New York C. and St. L. R. Co., 283 F.2d 328, cert. denied 364 U.S. 900, 81 S.Ct. 232, 5 L.Ed.2d 193; Missouri, Kansas & Texas Railroad Company v. Wright, Tex.Civ.App., 311 S.W.2d 440.

■ Where exceptions are not saved to instructions, this court will review only to determine whether they are free from fundamental error. 12 O.S.1961, § 578; Burke v. Scott, Okl., 361 P.2d 272; McMillan v. Lane Wood & Co., Okl., 361 P.2d 487.

■ We cannot say that the giving of the above instructions constituted fundamental error. Roberts v. Van Cleave, 205 Okl. 319, 237 P.2d 892.

Defendant's fifth proposition of error, without the citation of any authority, is based on the theory that the court repeatedly permitted plaintiff's witnesses to testify to conclusions and thereby invade the province of the jury.

■ This contention cannot be sustained for several different reasons. First, the contention is not supported by authority. Davis v. Jackson, 192 Okl. 15, 132 P.2d 923. Secondly, most of the answers referred to in the brief of defendant as being inadmissible were not objected to. Schell v. State ex rel. Hall, Okl., 418 P.2d 690. Thirdly, even had proper objections been made, the record reflects that other evidence of the same tenor was admitted with-

out objection. Oller v. Hicks, Okl., 441 P. 2d 356.

Defendant's sixth proposition of error is that the court refused to give its requested instruction No. 1, as follows:

"You are instructed that it is the duty if the plaintiff in the performance of his duties to keep a reasonable lookout for hazards which might interfere with the performance of his duties, and the failure on his part to perform such duty and keep such proper lookout makes said plaintiff guilty of negligence.

"When there is a duty to look, a failure to do so constitutes negligence. Likewise, where there is such a duty, mere looking is not sufficient. *A person guilty of negligence if he does not see what is plainly visible and within the range of vision or obviously apparent or observable by due or ordinary care.* In other words, if one does not see what, by the proper use of his senses, he might have seen he will be liable because of what he should have seen as well as for what he actually saw." (emphasis supplied)

The refusal to give the instruction was not error. In the first place such instruction is not supported by any evidence because the evidence clearly shows that plaintiff did look for danger and did use ordinary care. The instruction, if given, would have been reversible error under F.E.L.A. cases. We have held that the giving of an instruction that if a certain state of facts is found to exist such facts constitute contributory negligence is reversible error. City of Norman v. Sallee, 205 Okl. 419, 238 P.2d 292; see also Chicago, R. I. & P. Ry. Co. v. Kifer, 216 F.2d 753, cert. denied 348 U.S. 917, 75 S.Ct. 299, 99 L.Ed. 719. The instruction also meant that there could be no recovery in the event plaintiff was found guilty of negligence. This is not so for the reason that the instruction would indicate that contributory negligence is a complete defense, whereas the defendant could raise the defense of contributory negligence in F.E.L.A. cases only in mitigation of damages. Haines v. Southern Pacific Co., 7

Ariz.App. 65, 436 P.2d 159; Chicago, R. I. & P. Ry. Co. v. Kifer, supra; 45 U.S.C.A. § 53.

The trial court correctly covered the involved question in the instructions Nos. 2, 14, 17, 18, 19 and 23, and the jury could not have been misled.

Defendant's final proposition of error states that the verdict of the jury was excessive and inspired by passion and prejudice.

In considering this question it should be stated that we are committed to the rule that in an action for damages for personal injuries the court will not grant a new trial on the ground of excessive damages, unless the amount awarded be so flagrantly outrageous and extravagant as to clearly show that the jury was actuated by passion, partiality, prejudice or corruption. Jordan Bus Co. v. Garnand, 203 Okl. 623, 225 P.2d 173; Caldwell v. Cambron, Okl., 417 P.2d 568.

From the evidence it appears that plaintiff was unable to work from the date of his injury until July 3, 1966, a period of eight months and four days. That his average monthly wage, upon a six day week, was $616.80, making a loss in wages of $5,034.40. That he was in the hospital 53 days after the injury under the care of Dr. D, the doctor employed by the defendant. That he was sent home for a period of five months. That his feet hurt all the time and that he used crutches to balance himself. That on his right foot he has a little feeling in his big toe but no feeling in the others. That his feet swell more on rainy or cloudy days. That his feet hurt all the time.

Plaintiff's feet, together with pertinent X-ray pictures, were exhibited to the jury.

Only two doctors, both orthopedic surgeons, testified in the case. Dr. D, by deposition, that the injury to his right foot was permanent to the extent of 25 percent.

Dr. M testified that the bone in the right foot was thin and brittle and that "you can

almost look through the bone in the X-ray." That the situation occurs in all the bones extending down to the arch of the foot. That the bones are brittle and painful and prone to injury. That there is a wasting away of the bone and that medical term for such a condition is called Osteoporosis. That the condition of the feet is progressive and will become worse. That plaintiff has a thirty percent permanent disability to the body as a whole as the result of the injuries to both feet. That the permanent disability to his right foot is fifty percent and thirty percent to his left foot.

Dr. M further testified that plaintiff's ability to work will be limited and he will have continued pain. That he will become progressively worse and will be able to continue his job with the railroad only four or five years. That his painful condition will be progressively worse.

While it is true that plaintiff was again working for defendant at the time of the trial he had been assigned to lighter work.

The jury had a right to consider the testimony ·of Dr. M to the effect that plaintiff would be able to continue to work for defendant for four or five more years and the effect that would have on his loss of his earning capacity. He was averaging $7801.64 per year, not considering any likelihood of a pay raise. He had a working expectancy of 16 years. Plaintiff had suffered great pain as a result of the injury and his condition and pain will grow progressively worse according to the medical testimony.

We have held that there is no absolute standard to measure such damages and a wide latitude of discretion is necessarily left to the good sense and discretion of the jury which fixes the award. Shebester, Inc. v. Ford, Okl., 361 P.2d 200.

We cannot say that the judgment is excessive.

Affirmed.

All Justices concur.